## FOSTER *v.* BRADNEY.

Opinion delivered April 12, 1920.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— On appeal from a decree in equity the Supreme Court is bound by the findings of the chancellor so far as they are not discovered to be against the preponderance of the evidence.

2. APPEAL AND ERROR—CHANCELLOR'S FINDING—CONCLUSIVENESS.—A chancellor's finding will not be disturbed where it is impossible to ascertain from appellant's abstract whether such finding was correct or not.

3. SALES—NOTICE OF REJECTION.—Where a contract for the sale of a tractor required that notice be given of any breach of guaranty and that the property be returned within a specified time, but provided that the guaranty should not apply to a second-hand machine, the buyer could reject a second-hand machine sent to him instead of a new machine ordered, without complying with the conditions as to notice and return.

4. PRINCIPAL AND SURETY—PAYMENTS BY SURETY—RECOVERY.—Payments made by a surety for the buyer of a tractor after he was advised that the buyer had rightfully rejected the tractor because it was second-hand created no liability therefor on the part of the buyer toward the surety.

5. PRINCIPAL AND SURETY—PAYMENTS BEFORE REJECTION.—Payments by a surety with his principal's consent to enable his principal to get possession of a tractor can be collected by the surety from the principal, though the principal thereafter rejected the tractor as not conforming to the contract.

6. LANDLORD AND TENANT—LIEN FOR SUPPLIES.—A landlord has a lien on his tenant's crop for the purchase price of supplies the payment of which he had guaranteed, though he had not actually paid for them.

7. LANDLORD AND TENANT—RIGHT TO LIEN.—One who bought crops from a tenant with knowledge of the landlord's lien, after securing the landlord's consent thereto on condition that the surplus after paying a chattel mortgage should be deposited in a bank subject to the lien, is liable to the landlord for the amount of such surplus paid to the tenant instead of depositing it in the bank.

8. LANDLORD AND TENANT—CONSENT TO DELIVERY OF CROP SUBJECT TO LIEN.—A landlord does not waive his lien on his tenant's crop by agreeing that the crop be delivered to the creditor as security, subject to the landlord's lien.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

*Emerson, Donham & Shepherd,* for appellant.

1. The court erred in finding that the 1914 account between Foster and Bradney had been settled, as there is no evidence to sustain the finding. Bradney admits in his pleadings that he was indebted to plaintiff $1,800.23

on the 1914 account, and it was error to refuse to give plaintiff judgment therefor.

2. The court erred in refusing to allow plaintiff's claim against Bradney and Lawson for the purchase price of the tractor engine and the freight thereon, which plaintiff was compelled to pay, as surety for them. The evidence clearly shows that the tractor was purchased by Bradney and Lawson from the Rumley Products Company, and that plaintiff merely signed the purchase contract with them to secure the payment of the purchase price. They did not buy it from Foster nor contract to buy it from him, nor did Foster contract to sell them the tractor. Foster was merely a surety for them and guaranteed the payment of the purchase price. No objection was made by Bradney and Lawson at the time as to the quality of the tractor, but they accepted it and used it and are liable for the price and freight paid for them by Foster as their surety. Under the contract if the machine was not as warranted, upon discovery of that fact Bradney and Lawson should have given notice of the defect and upon the failure of the vendor to remedy the defect it was their duty to return the defective tractor and notify the vendor and demand a refund of the purchase price, and their failure to do so was a waiver of the warranty. 75 Ark. 206; 76 *Id.* 74; 78 *Id.* 177; 98 *Id.* 482. Bradney and Lawson are now estopped to deny liability under the contract. 10 R. C. L. 694; 25 N. E. 67; 48 N. W. 771; 91 Ark. 141; 35 *Id.* 218, 293; 33 *Id.* 465; 2 Pom., Eq. Jur., § 964.

3. The court erred in disallowing the items in the 1915 account of $158.50 due Lawrence Brown and $26.22 due Legg & Murphy by Bradney and Lawson, the payment of which was guaranteed by plaintiff. Bradney and Lawson admit that these items are correct charges and that plaintiff secured or guaranteed them and it was error to disallow them, because the parties to whom the accounts were payable were not interpleaded. Bradney and Lawson were insolvent. Plaintiff had a landlord's lien on defendant's portion of the crop, and it

was error to disallow these items, as plaintiff was entitled to indemnity. 21 R. C. L., p. 1115, § 151; 32 Cyc. 248. See also 21 R. C. L., p. 1117, § 153; 14 Pac. 442; 119 N. W. 596; 96 Ark. 268.

4. The court erred in dismissing the complaint as to defendants John W. Burns and E. N. Harrod.

*Roy D. Campbell,* for appellees.

There is nothing in this record but a question of fact, which is settled by the decision of the chancellor. The cases cited for appellant have no application. The decree is really more favorable to appellant than he deserves and should be affirmed.

McCULLOCH, C. J. Appellant, H. A. Foster, purchased a rice farm in St. Francis County during the year 1914, and in the purchase of the farm he assumed performance of a rental contract made by his grantor with appellee, J. F. Bradney, covering the rental of the place for that year. Appellant rented the farm to Bradney and M. R. Lawson for the year 1915, and agreed to furnish them money and other supplies for the operation of the farm. Appellant claims that Bradney still owes him for a balance due on the account for the year 1914, and that Bradney and Lawson owe him a large balance due for rent and for supplies on the transactions for the year 1915. He instituted this action to enforce his lien on the balance of the crop and asked that a receiver be appointed to take charge of the crop and market it. A receiver was appointed in accordance with the prayer of the complaint.

Appellant also alleged in his complaint that certain portions of the crop had been sold by Bradney and Lawson to J. W. Burns, with notice on the part of the latter of appellant's lien for rents and supplies, and it is also alleged that a portion of the crop was sold and delivered by said tenants to E. N. Harrod, with notice of appellant's lien. Burns and Harrod were joined as defendants in the action. Bradney and Lawson filed an answer denying the allegations of the complaint with respect to

the balances due on the transactions for the year 1914 and for the year 1915, except that it is admitted that there is a balance due appellant on said indebtedness in the sum of $383.97.

On the trial of the cause the chancery court allowed appellant the sum of $417.91, balance due on the account of 1915, and rendered judgment in appellant's favor against Bradney and Lawson and declared a lien on the proceeds of the crop in the hands of the receiver. The complaint was dismissed as to the other amounts claimed in the accounts of appellant, and the court also dismissed the complaint as to Burns and Harrod.

The appeal presents merely a question of fact for our consideration, and we are, of course, bound by the findings of the chancellor so far as they are not discovered to be against the preponderance of the evidence.

The major portion of appellant's claim for balance due on the account for the year 1914 is an item claimed by appellant by way of damages for the failure of Bradney and Lawson to cultivate and harvest the crop on a certain portion of the leased premises. The tenants, Bradney and Lawson, filed a counter-claim for damages by reason of appellant's failure to furnish a supply of water on this portion of the land on which the crop failed. The chancellor disallowed both claims, and we are unable to discover from the evidence, as abstracted, any grounds for overturning these findings.

It appears that appellant and Bradney undertook to make a settlement at the end of the year 1914 for the account of that year, and that they agreed upon a settlement of numerous items in their respective accounts, but that their efforts did not result in a complete settlement. The evidence shows that when they broke off negotiations appellant was claiming a balance of $155. The testimony shows, as before stated, that a number of items in the account were agreed upon by way of settlement, but it is not made clear to us how much of the account was left unsettled, nor is the proof as abstracted sufficient to show that appellant's claim is well founded.

In other words, it is impossible for us to ascertain from the record as presented to us in the abstract whether or not the chancellor's finding in this regard was correct, and it is our duty in such case to leave the finding undisturbed.

The largest item in the controversy is one which covers the purchase price of a tractor which Bradney and Lawson purchased from the Rumley Products Company, and appellant became surety for them for the purchase price. The total price of the tractor with freight charges thereon was $1,411. There was a written contract between the Rumley Products Company and Bradney and Lawson for the purchase of the machine, and appellant endorsed the contract as surety for the purchasers. There was some delay in the shipment of the machine by reason of an adverse report which came to the Rumley Products Company from appellant's home in Illinois concerning his financial credibility. Under the contract the tractor was to be shipped to Bradney and Lawson on time payments, but on account of the adverse report received as to the credit of appellant, the Rumley Products Company declined to ship without a cash payment, and they finally shipped the machine to Bradney and Lawson at Brinkley, Arkansas, or rather to their own order at Brinkley, and sent the bill of lading attached to a draft for a cash payment of $445. When the machine arrived at Brinkley, appellant paid the note, and also paid the freight, making an aggregate of about $500, which he paid out for Bradney and Lawson. The machine was unloaded and taken out to the farm, and Rumley Products Company sent a demonstrator to put the machine to work for the purchasers. It was then discovered that the machine was a second-hand one, and was not in accordance with the contract. Notwithstanding that fact, appellant paid the remainder of the purchase price, and claimed the whole amount in his account against Bradney and Lawson. The latter assert that appellant was advised of the rejection of the machine on account of it being second-hand, and that he had no right to make the payments thereon. Ap-

pellant claims, on the other hand, that he was bound by his endorsement of suretyship, and that Bradney and Lawson forfeited their right to claim a breach of warranty of the machinery by reason of the fact that they had failed to give notice, in accordance with the terms of the contract. The contract contains the following provision with respect to the enforcement of warranty:

"Said machinery is warranted to be well made and of good material, and, with proper use, capable of doing as good work as any other machinery of the same kind, size and rated capacity, working under like conditions, but any machine or part thereof, not manufactured for or by the vendor, or which is second-hand, rebuilt or repaired, is not warranted by statute or otherwise. Purchaser shall not be entitled to rely upon any breach of the above warranty or to rescind his contract or to any claim or set-off against the vendor because of any breach unless: (a) Notice of the defect or breach, particularly describing the same and specifying the time of discovery thereof, is given by registered letter addressed to vendor at its head office, posted within four days after such delivery; (b) such defect or breach appears within ten days after the first use of the goods; (c) the vendor fails to remedy such defect or breach by substitution of parts or otherwise within a reasonable time after receipt of such notice, which substitution it shall have the right to make. Purchaser shall render necessary and friendly assistance to vendor in and about remedying the defect. If vendor fails to remedy the defect, purchaser shall have the right to immediately return the defective goods or parts in as good condition as when received by him to the place from where they were received, and shall thereupon give vendor immediately written notice of such return by a registered letter addressed and mailed to vendor at its head office. Thereupon the money paid and security given by purchaser on account of the purchase price of the goods returned will promptly be returned by vendor and vendor shall be released from all further claim. Failure to so return the goods or to give the aforesaid notices

shall be taken as conclusive evidence that the warranty is satisfied.''

It will be observed from a perusal of the language of the contract that it has no application to the sale of a second-hand or rebuilt or repaired machine. That being true, the stipulation concerning notice is not binding on the purchasers, if the proof is sufficient to show that it was a second-hand machine. The purchaser could not, of course, under settled principles of law, retain the machine and refuse to pay the price, but the proof shows that they notified the agent of the Rumley Products Company that the machine was unfit for use and that they refused to accept it or pay for it. They were not bound by the terms of the contract, however, to give notice as therein provided for the reason that this feature of the contract did not cover the sale of a second-hand machine. Appellant was advised of the fact that the machine was not up to the requirements of the contract in that it was a second-hand one, and when he made the final payment he did so at his peril. He knew that Bradney and Lawson had a right to decline to make the payment, and that they had done so, and he can not be permitted, by making the payment over their protest, to impose on them a liability which did not exist under the contract of purchase.

What we have said in this regard does not, however, apply to the initial payment which appellant made for Bradney and Lawson on the price of the tractor and the freight. Those payments were made in order to take up the bill of lading and get possession of the machine. Bradney and Lawson were present when the machine was unloaded and knew that appellant was making the payments, and as this was done for their benefit, they are liable to appellant for the amount.

The case is argued here by counsel for appellees as if appellant was responsible for the substitution of the second-hand machine shipped to them in place of the one called for in the contract, but the evidence in the record does not sustain that contention. There was no

change made in the contract between Bradney and Lawson and the Rumley Products Company. There was a mere suspension of the contract by reason of the adverse report on appellant's credit, but when that matter was cleared up the shipment was made by the Rumley Products Company on the original contract except that the method of payments was changed. It does not appear that appellant was a party to the substitution or that he was responsible for it in any way, and he is, therefore, entitled to reimbursement of the amount he paid out in order to permit Bradney and Lawson to obtain possession of the machine when it arrived at Brinkley. The chancellor erred in failing to allow this item of $500.

There are two other items which it is equally clear ought to have been allowed to appellant on the account for the year 1915. One is the amount of $158.50, due one Lawrence Brown, and $26.22 due Legg & Murphy. These amounts were for supplies furnished by those parties and the payment of the accounts was guaranteed by appellant. The only reason given why they should not be allowed was that appellant had not actually paid the amounts. That, however, is not essential to the right of appellant to include them in the enforcement of his lien on the crop. He had not in fact paid the accounts, but he was liable on the contract of guaranty and is entitled to have the lien on the crop enforced. 21 R. C. L., p. 1117.

The court also erred in refusing to render a decree against Burns and Harrod, respectively, for the amounts of the crop of rice received by them. Appellee, Burns, purchased from Bradney and Lawson a lot of rice for the sum of $1,411.31. He had information that appellant had a lien on the rice, and he applied to the latter for consent to the purchase. Appellant consented on condition that the balance of the purchase price, after the payment of the amount due on a certain chattel mortgage to one Anderson, should be paid over to a bank at Cotton Plant to be held subject to appellant's lien. Instead of handling the proceeds in accordance with appellant's directions, Burns paid the whole amount over to Bradney, who paid

the mortgage debt of $800 to Anderson, but failed to deposit the balance in the bank at Cotton Plant, and he converted the money to his own use. Burns is responsible for the balance over and above the amount paid in discharge of the Anderson mortgage, and the chancellor erred in not rendering a decree against him.

Bradney and Lawson delivered 1,814 bushels of rice of the crop of 1915 to appellee E. N. Harrod as security for a debt. Harrod made inquiry of appellant concerning the transaction and was informed by the latter of his lien, and appellant did not consent to the sale of the rice in discharge of the debt to Harrod. There was no waiver by appellant of his lien on that part of the rice crop delivered to Harrod. He merely stated to Harrod that he had no objection to its being placed in the latter's hands as security, subject to his (appellant's) lien.

The decree, is therefore, reversed and the cause remanded with directions that, in addition to the sum of $417.91 allowed by the former decree, decree be entered in favor of appellant against Bradney and Lawson for the items herein mentioned of $500, $158.50 and $26.22, and that also decree be rendered against Burns and Harrod, respectively, for the proceeds of the crop that went into their hands as above indicated.