WOOTEN & COMPANY v. BAIN-ADAMS COMPANY.

Opinion delivered December 13, 1920.

1. APPEAL AND ERROR—JUDGMENT ON DIRECTED VERDICT.—On an appeal from a judgment on a directed verdict, the evidence will be viewed in the light most favorable to appellant's contention.

2. SALES—DELIVERY.—In an action against a purchaser for failure to receive cotton, delivery or tender of the cotton pursuant to the usual custom of the trade is sufficient, where there was no stipulation or agreement that the delivery should be made at any special time.

3. WITNESSES — IMPEACHMENT BY CONTRADICTORY STATEMENT.— Where the purchaser's agent testified concerning the transaction, it was competent to impeach him by proving a telephone conversation between him and the purchaser which occurred on the day the sale was made and in regard to the same subject-matter, and which would have tended to contradict his testimony.

4. SALES—QUESTION FOR JURY.—It was error to direct a verdict for the seller upon the theory that the undisputed testimony showed an offer to comply with a contract for sale of cotton on the part of the sellers and a refusal to comply on the part of the purchasers, where the latter's testimony tended to prove that the cotton tendered was not of the grade required by the contract.

5. SALES—INSTALLMENT CONTRACT.—Where delivery of cotton under a contract was to be made in installments, it was the buyers' duty to accept all the cotton conforming to the contract, and they could not accept a portion and reject the balance, nor could they accept the first shipment, even though it did not conform to the contract, and thereafter refuse on that account to accept other shipments which did conform to the contract; but the fact that they accepted a shipment which did not comply with the contract did not require them to accept other shipments which did not meet the requirements of the contract.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

*Moore & Vineyard,* for appellants.

1. The alleged confirmation paper by J. R. Woods was not a confirmation of the contract of September 28, and plaintiffs must fail in their action because the proof wholly fails to bear out the confirmation. 137 S. W. 827; 96 S. W. 386.

2. It was error to instruct a verdict. The case upon the evidence was one for a jury. *Ib.;* 89 *Id.* 368; 106 *Id.* 482. Where there is any evidence tending to support the issue, it is error to take the case from the jury. 103 Ark. 401; 104 *Id.* 267; 120 *Id.* 206; 132 *Id.* 441. An agent who is only empowered by his principal to solicit orders for, or make sale of goods, has no implied authority to receive payment therefor or to modify, cancel or rescind the sale. 100 Ark. 363; 92 *Id.* 315; 94 *Id.* 301. The authority of an agent must be shown by positive proof or by circumstances showing satisfaction or assent to the sale or contract. 132 Ark. 155. Parties dealing with a special agent must look to his authority. 23 *Id.* 411; 74 *Id.* 557; 104 *Id.* 150; 132 *Id.* 155; 105 *Id.* 111. There was evidence for a jury and it was error to direct a verdict.

*Rowell & Alexander,* for appellees.

The court properly instructed a verdict, as under the evidence no case for a jury was made. The undisputed evidence fixed the amount of the verdict and there was no evidence to establish an issue for the appellants. 95 Ark. 488; 2 C. J. 570; 219 S. W. 319; 55 Ark. 627; 122 *Id.* 357. The principal is bound by the authority given to his agent and by the authority which a third person dealing with him has a right to believe has been given to him. 103 Ark. 79-86; 96 *Id.* 456. If the agent's authority is limited, the burden is on the principal to show that the third person had notice of same. 103 Ark. 79-86 See, also, 100 Ark. 240. Woods was instructed by appellants to buy this cotton and they are liable to appellees. 87 Ark. 374. The general rule of agency is correctly stated in 21 R. C. L. 837-8-844. Where an agent is acting for his principal, he will be presumed to be a general agent in the absence of notice to the contrary. 112 Ark. 63-8. The measure of damages was the market value of the cotton at the place of delivery at the time Wooten Company breached the contract. 134 Ark. 300. There was nothing for a jury to pass upon, and an instructed verdict was proper.

SMITH, J.   This appeal comes from a judgment pronounced upon a verdict returned under the direction of the court, after the jury trying the cause had been unable to agree.   As the verdict was directed against appellants, we must view the testimony in the light most favorable to their contention, and the case may be stated as follows:   Appellants compose a copartnership engaged in buying cotton, with their principal office at Helena, Arkansas.   Appellees compose a copartnership, and are merchants and cotton buyers, with their place of business at Portland, Arkansas.   J. R. Woods was the agent of appellants, and bought cotton for them in the territory adjacent to Portland, and on September 28, 1918, bought from appellees two hundred bales of cotton for the account of appellants.   Woods bought on orders given him daily by appellants, and made a report in writing at the close of each day, showing what he had bought.   Appellants declined to accept certain cotton tendered in discharge of this contract, and appellee brought this suit to recover damages on that account.

At the trial from which this appeal comes Adams, who was one of the partners composing the Bain-Adams Company, testified in behalf of appellees, as did Woods. According to Adams, the sale to Woods included certain specific cotton, and all of the cotton tendered conformed to the specifications of the contract.   In stating his contract with Woods, Adams testified that there was nothing said about the staple of the cotton, "only it was to be Portland."   He explained that it was the early part of the season, and that the grade of all the cotton in controversy was practically the same.   The testimony shows that Portland cotton classed along with what was called bayou cotton, and that this staple averaged 1 1-16 inches in length.   The staple of other cotton grown in the same county, but away from Bayou Bartholomew, averaged less than that, and was less valuable.   Woods gave testimony substantially corroborating that of Adams.   He admitted that on September 29th he had wired appel-

lants, "Bought 300 bales of bayous at price named Friday night," and he identified a written report made by him on the 28th reciting that he had bought that date from appellees at Portland 200 bales of cotton at 35 cents per pound, to be shipped at once. This report also showed the purchase of 102 bales of cotton, made on the same day, from other persons, some of which had been bought as low as 32½ cents per pound.

After the controversy arose, which terminated in this lawsuit, Woods gave appellees the following writing:

"Hamburg, Ark., September 28, 1918.

"The Bain-Adams Company, Portland, Ark. Gentlemen: I hereby confirm purchase from you over 'phone of 200 B/C for account of Messrs. C. A. Wooten & Company of Helena, Ark., at 35 cents per lb. As per conversation, we will accept the sixty-four B/C, A. P. McCombs from Thebes, also the sixty B/C from W. L. Blanks at Parkdale, and you are to ship the remainder from Portland, or cotton fully equal Portland cotton in staple and grade.

"Yours truly,

"J. R. Woods.

"This confirmation given on this November 1, 1918, is as I would have given it on September 28, the date of purchase.

"J. R. Woods."

Nothing more is claimed for this writing than that it evidences the contract made on September 28th, and Adams testified that Woods had seen the cotton therein mentioned, and had agreed to accept it under the contract, and that he was proceeding in the usual and customary way to deliver the cotton, when appellants refused to receive and pay for it.

The first shipment made consisted of 33 bales. Bills of lading covering this shipment were attached to a draft drawn on appellants, and the draft was paid on presentation. Two additional shipments were made in a similar

way, but the drafts accompanying the bills of lading were dishonored.

C. A. Wooten, a member of the appellant firm, testified that the first draft was paid prematurely and inadvertently by his cashier, and should not have been paid at all, as the cotton did not meet the requirements of the contract; that these drafts were not payable until samples of the cotton had been received and examined, and this first payment was made before the arrival of the samples. Wooten further testified that he bought this cotton to fill a special order, which required its delivery in New Orleans by the end of October, and that delivery of the cotton was not made promptly by appellees as required by the contract, and, as we understand his testimony, the first shipment had gone on to New Orleans before the discovery that the cotton did not meet the requirements of the contract. He further testified that the second and third shipments were refused because they were not made in time, and because the shipments were made from points which indicated that the cotton would not be of the required grade. These last shipments covered in part the cotton mentioned in the written confirmation given by Woods on November 1st, but the Blanks cotton there mentioned was never shipped. According to both Woods and Adams, the McCombs cotton, which was embraced in the last shipment, had been inspected and accepted by Woods at the time the contract was made.

After buying the cotton Woods reported the details of the trade to appellants over the telephone, and Wooten offered to testify as to what Woods then told him. This testimony was excluded by the court upon the ground that it made no difference what Woods told Wooten, as the only question in the case was what contract was made between Woods and Adams.

It is insisted, for the reversal of the judgment, that the cotton was not tendered in time to answer the purpose for which it was bought. But it does not appear

that Woods advised Adams that the cotton was being bought for delivery at any special time, and, in the absence of some stipulation to that effect, it would have been sufficient to have made a delivery, or a tender, of the cotton pursuant to the usual and ordinary custom of the trade.

We think the court should have allowed Wooten to detail the conversation which he had with Woods. The court was correct in the view that appellants were bound by what occurred between Woods and Adams, but Woods had been called by, and had testified in behalf of, appellees, and the proffered testimony was admissible for the purpose of contradicting Woods. The conversation with Adams, and the one with Wooten, occurred on the same day, and in regard to the same subject-matter, and the excluded testimony would have tended to contradict that offered by Woods at the trial.

We think it can not be said that the undisputed testimony shows an offer to comply on the part of appellees and a refusal to comply on the part of appellants. According to Wooten, he had bought cotton for many years in the territory in which appellees operated, and he knew the grade of the cotton by the points from which it came, and that the cotton which he received, and other cotton which was tendered to him, did not conform to the contract.

If the cotton tendered conformed to the contract, it was appellants' duty to accept it; while, if Woods did not buy specific lots of cotton, appellants had the right to reject any cotton which did not class as Portland or bayou cotton.

The contract was an entire one, although the delivery was to be made in installments, and it was, therefore, appellants' duty to accept all the cotton conforming to the contract. They had no right to accept a portion and to reject the balance. *Ward Furniture Mfg. Co.* v. *Isbell,* 81 Ark. 549.

Appellants could not accept the first shipment, even though it did not conform to the contract, and thereafter refuse, on that account, to accept other shipments, which did conform to the contract. *Foster* v. *Bradney,* 143 Ark. 319; *Thomas* v. *Gray,* 94 Ark. 9; *Guernsey* v. *West Coast Lumber Co.,* 25 Pac. 414; *Miller* v. *Moore,* 10 S. E. 360, 6 L. R. A. 374; *McFadden* v. *Wetherbee,* 29 N. W. 881.

On the other hand, the fact that they had accepted a consignment of cotton falling short of the requirements of the contract did not require them to accept other consignments which did not meet the requirements of the contract. *Cahen* v. *Platt,* 25 Am. Rep. 203, 69 N. Y. 348; *Reed* v. *Randall,* 29 N. Y. 358, 86 Am. Dec. 305. See, also, cases cited in note to *Jackson* v. *Rotax Motor Co.,* 20 A. & E. Ann. Cas. 528; Mechem on Sales, vol. 2, sec. 1398.

A general statement of the law applicable to the facts of the case is found at section 267 of the article on Sales, 23 R. C. L., page 1443. It reads as follows:

"Acceptance of Part.—If the buyer, on receiving a part of the goods, finds they are not of the kind or quality which his contract entitles him to, he is not at liberty to retain such part, and claim damages for the nondelivery of the entire quantity, nor can he require the delivery of the residue, retaining a claim for damages; he must either receive the article as it is, or he must return the portion delivered, and then enforce his claim for damages, and if the balance when tendered is of the quality required by the contract, the inferior quality of that theretofore accepted by him affords no excuse for his refusal to accept such balance. The acceptance, however, of a part does not preclude the buyer from requiring that the balance, when tendered by the buyer, shall be of the quality required by the contract; and if such balance, when tendered, is not of the quality required, he may reject the same without incurring any liability as for a breach of contract on his part. In an

executory contract for the sale of goods, the purchaser may, if the contract be severable in respect to the delivery, accept and use any portions as delivered without waiving any right which may arise from a deficiency in the amount ultimately delivered. It is otherwise when the contract is entire and all the goods are to be delivered at one time. Where a contract for the sale of several articles is entire and all are sent to the buyer, he has no right to accept part and reject the others, and his acceptance of part will be binding upon him as an acceptance of all; but where the contract for the sale of a number of articles is several as to each article, the buyer may accept and retain those which conform to the requirements of the contract and reject those which do not."

Of course, if Woods bought a specific lot of cotton, and there was no fraud or misrepresentation concerning its grade or quality, then appellants were obligated to take that cotton in partial fulfillment of the contract. But the duty to accept specific bales of cotton did not compel appellants to accept other cotton which did not grade as high as Portland or bayou cotton.

The record presents these questions of fact which should have been submitted to the jury, and for the failure so to do the judgment is reversed and the cause remanded for a new trial.