FIRST NATIONAL BANK *v.* DUVALL.

Opinion delivered January 8, 1923.

1.  LANDLORD AND TENANT—NOTICE OF LANDLORD'S LIEN.—Where a bank, upon taking over the affairs of another bank, employed the cashier of the closing bank to settle its accounts, and thereafter through him came into possession of cotton warehouse receipts which, at the time they were accepted by him as cashier of the closing bank, were known to be subject to a landlord's lien, the second bank was chargeable with notice of the landlord's lien, and liable therefor.

2. LANDLORD AND TENANT—RELEASE OF LIEN—EVIDENCE.—Evidence that one holding a landlord's lien on a cotton crop had in effect permitted a substitution of °one tenant for another upon the substituted tenant's agreement to pay the rent and supply bill *held* insufficient to prove a release of his lien.

Appeal from Conway Circuit Court; *J. T. Bullock,* special judge; affirmed.

*Strait & Strait,* for appellant.

The court was without jurisdiction to hear and determine the cause. It was error to withdraw the case from the jury. 67 Ark. 362; 60 Ark. 357; 67 Ark. 455; 31 Ark. 131; 52 Ark. 158. The consent by appellee to the removal of the crop waived his landlord's lien. 60 Ark. 357; 34 Ark. 691. The court should have sustained the motion to dismiss. 122 Ark. 141.

*Edward Gordon,* for appellee.

The landlord has a lien upon the crop grown upon his land for the rent and supplies furnished the tenant. Crawford & Moses' Digest, §§ 6889-90; 34 Ark. 691.

WOOD, J. This is an action in justice court by S. A. Duvall, hereafter called appellee, against the First National Bank, hereafter called appellant, and others. The appellee in his complaint alleged that he rented certain lands to one L. Kibby for the year 1920, for which Kibby agreed to pay one-fourth of certain bales of cotton, describing the same by the ginner's and warehousemen's numbers. The appellee alleged that the cotton was stored in the Morrilton Cotton Warehouse Company, and that the appellant held the warehouse receipts. The appellee further alleged that, in addition to one-fourth of the cotton due as rent, he had furnished to Kibby, in order to enable him to make the crop for the year 1920, supplies in the sum of $85. The appellee prayed for an order for specific attachment of the cotton and judgment for the amount due him for rents and supplies, and that the cotton be subjected to the payment of the same. The attachment was duly issued and levied and a forthcoming bond executed by the appellant. In his complaint the

appellee named L. Kibby, the appellant, and the Morrilton Cotton Warehouse Company as defendants. He did not name W. A. Duvall, but before the cause was heard in the justice court W. A. Duvall, by written petition, asked to be made a party. He waived service. In his petition he set up that he rented the land upon which the cotton in controversy was grown, and that the appellee furnished him supplies to make the crop, and admitted that the appellee had a valid and subsisting lien on the cotton and for his rents and supplies. He further alleged that before he had completed gathering the crop he sold his interest to L. Kibby. He prayed that, if the cause were appealed by the bank, he be relieved from all costs.

The appellant demurred in the justice court, setting up that the complaint did not state a cause of action against it, and that the court was without jurisdiction. The trial in the justice court resulted in a judgment in favor of the appellee against the appellant for his claim, and sustaining the attachment. The cause was appealed to the circuit court. The testimony at the trial was substantially as follows:

The appellee testified that he rented the land upon which the cotton was grown to his son, W. A. Duvall, for the year 1920, who was indebted to appellee in the sum of $243 for supplies and for rent. Kibby bought the crop in the first part of the fall from W. A. Duvall and agreed to settle his debt to the appellee for the supplies and rent. W. A. Duvall owed the appellee for supplies the sum of $85 and the sum of $45 for rent, one-fourth the value of the three bales of cotton, which amounts were due and had not been paid. Appellee instituted this action and had the attachment issued and levied on the cotton, which had been stored in the warehouse by Kibby, and for which the appellant held the warehouse receipts. The appellee did not mention the matter to the bank himself, but had another to do so for him. Appellee knew where the cotton was all the time.

L. Kibby testified that he bought the crop from (Bud) W. A. Duvall; that he gathered the cotton and placed it in a warehouse and turned the receipts over to Mr. Massey of the Citizens' Bank, and told him at the time that there was a landlord's lien against one-fourth of the cotton. The cotton was stored in the name of Duvall and Kibby. It was the understanding between witness W. A. Duvall and the appellee, at the time of the purchase, that witness was to pay the supply bill and the rent. He paid part of the supply bill, leaving something like $85 unpaid.

Massey testified that the warehouse receipts for the cotton in controversy were transferred by Kibby to the Citizens' Bank, and the Citizens' Bank later sold them and transferred them, along with other assets, to the appellant. The Citizens' Bank had a mortgage on the cotton crop grown by W. A. Duvall on the land of S. A. Duvall for the year 1920. When Kibby bought the crop from W. A. Duvall, he assumed the payment of W. A. Duvall's notes to the Citizens' Bank. The warehouse receipts transferred to the appellant were put up with the Citizens' Bank as collateral to secure the bank for money advanced to Kibby. The Citizens' Bank thought it owned the receipts. It never had authority from Kibby or Duvall to apply this collateral to Kibby's debt. The bank only held them as collateral. It borrowed money on them two or three times in Little Rock. The receipts were negotiable instruments. They were first transferred to the Citizens' Bank, and the Citizens' Bank transferred them to the American Bank of Commerce & Trust Company at Little Rock. When the Citizens' Bank sold out to the appellant, the latter paid off the indebtedness of the Citizens' Bank to the Little Rock bank and got the receipts in that way. When the appellant took over the assets of the Citizens' Bank, witness went with the appellant as its employee. Witness' duties were to look after the affairs of the Citizens' Bank which the appellant had taken over. He was a clerk of the appellant,

and assisted it in collecting the indebtedness due the Citizens' Bank. When the transfer was made of all of the assets of the Citizens' Bank to the appellant, nothing was said about the names in which the warehouse receipts were issued. The cotton was stored in the warehouse in the first part of 1921, and was sold by the appellant for twenty and five-eighths cents per pound, less expenses.

Clifton Moose testified that he was the cashier of the appellant. That the appellant became the owner of the cotton through the warehouse receipts. The appellant did not know anything about any landlord's lien on the cotton, or the claim of a lien. None of the bank's officials knew about that. Witness transacted the business of making the transfer. The Citizens' Bank had transferred all of its assets to the appellant. Witness saw the receipts, but paid no attention to the name, as the appellant bought them by number. Warehouse receipts are negotiable instruments.

At the conclusion of the testimony the court withdrew the cause from the jury and declared that under the testimony, as a matter of law, the appellant was liable to the appellee in the sum of $130. Judgment was rendered in appellee's favor for that sum, from which is this appeal.

While Moose, the cashier of appellant, testified that he negotiated the transaction for the appellant resulting in the transfer of the cotton in controversy to the appellant, and that the appellant knew nothing of the appellee's claim for rents and supplies, nevertheless it occurs to us that, under the undisputed facts established by the evidence, appellant was charged with notice of the appellee's claim. The undisputed testimony shows that Massey was the cashier of the Citizens' Bank at the time it acquired the warehouse receipts as collateral. These receipts were issued in the name of Duvall and Kibby. At that time the Citizens' Bank had a mortgage on this cotton, which specifically stated that the cotton was grown on the land of the appellee. Massey was also informed

at the time of the transfer of the warehouse receipts to the Citizens' Bank that there was a landlord's lien upon the same. Massey testified that when the assets of the Citizens' Bank, including the warehouse receipts, were transferred to the appellant, he was employed by the appellant to look after the business of the Citizens' Bank that had been taken over by the appellant.

The testimony of Massey was not disputed. His testimony, taken in connection with the warehouse receipts themselves, and the mortgage showing that the cotton was grown on the land of the appellee, and the testimony of Kibby, which was undisputed, that, at the time of the transfer of the warehouse receipts for the cotton to the Citizens' Bank, he informed its cashier, Massey, that there was a landlord's lien, all together certainly constituted notice to appellant of the lien of the appellee. Moreover, notice to Massey, under the circumstances, was notice to appellant, because Massey was specially designated by appellee to collect the Citizens' Bank accounts. The undisputed testimony shows that the appellee had not released his lien. His consent that Kibby purchase the crop, ungathered in the field, from W. A. Duvall, upon the agreement of Kibby to pay appellee his rents and supply bill, was but tantamount to the substitution by appellee of one tenant for another. It did not constitute, on the part of the appellee, a waiver or relinquishment of his lien. He brought his action to enforce his lien by specific attachment, pursuant to the provisions of §§ 6897 and 6899 of Crawford & Moses' Digest. Both Kibby and W. A. Duvall were parties. The court had jurisdiction. See *Ferniman* v. *Nowlin,* 91 Ark. 20, and cases there cited.

The appellant, as we have seen, was not an innocent purchaser of the cotton. When the attachment was levied and it executed a forthcoming bond and sold the cotton, it became liable to the appellee for the amount due him for rents and supplies. The court was correct

in so declaring as a matter of law. See §§ 6889 and 6890, C. & M. Digest, and *Volmer* v. *Wharton,* 34 Ark. 691.

The judgment is therefore affirmed.