Rose City Mercantile Company *v.* Miller.

Opinion delivered October 11, 1926.

1. LANDLORD AND TENANT—RIGHT TO LIEN.—Where, after leasing a farm, the owner conveyed the land to her two daughters, they were entitled to enforce their lien for the rents subsequently accruing.

2. PRINCIPAL AND AGENT—ESTOPPEL.—An agent who collected rents for a landlord cannot question the authority under which he acted.

3. CORPORATION—LIABILITY FOR ACTS OF PRESIDENT.—Where a corporation, whose president as agent for a landlord collected and converted rents by applying them to pay debts due by the tenant to the corporation, the corporation is liable for such rents.

4. LANDLORD AND TENANT—WAIVER OF LIEN.—By authorizing a mortgagee of a tenant's cotton to sell it and apply the proceeds to the payment of rents, the landlord does not waive his lien in favor of such mortgagee, though the cotton has passed to purchasers free from such lien.

5. LANDLORD AND TENANT—ENFORCEMENT OF LIEN.—Equity has jurisdiction of a suit by a landlord against a mortgagee of the tenant's crop, which, having authority to sell the tenant's crop and apply the proceeds to payment of rent, wrongfully converted a portion of such proceeds.

6. LANDLORD AND TENANT—CONVERSION OF CROP—LIABILITY.—Where the president of a corporation, which was a mortgagee of a tenant, sold the tenant's crop on which there was a landlord's lien, the corporation, by appropriating a part of the proceeds, became liable to the landlord for an amount not exceeding the rent.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Wills & Strangways,* for appellant.

*J. C. Marshall,* for appellee.

SMITH, J. Certain preliminary pleadings and motions were filed in this cause and are discussed in the briefs, but a stipulation filed upon the submission of the case in the court below renders it unnecessary to consider them. In this stipulation it was agreed "that this cause shall be tried as a suit brought for the purpose of enforcing the rent lien of plaintiffs against defendant for cotton appropriated by it on which the rent had not been paid"

In support of this cause of action the plaintiffs offered testimony to the following effect: Mrs. H. T. Urquhart, by written contract, leased her farm to two tenants. One portion of the farm was leased to Son Lewis, and another portion to Crawford Romus. The rent of one tenant was $1,750, and the rent of the other was $1,250. After executing these lease contracts, Mrs. Urquhart conveyed the farm to her two daughters, Mrs. Miller and Mrs. Ragland, who are the plaintiffs in this suit. W. H. Miller, the husband of one of the plaintiffs, was agent for both the plaintiffs in the collection of the rents. The Rose City Mercantile Company, hereinafter referred to as the company, a corporation, of which J. L. Atkins was president, made advances of money and supplies to sharecroppers of Lewis and Romus to enable them to make a crop during the year 1923, and, to secure these advances, took a mortgage on the crop of these sharecroppers.

Miller testified that Atkins stated to him that he would like to handle the crop to protect the interest of the store, which both understood to mean the Rose City Mercantile Company, and that, pursuant to this conversation, he wrote Atkins the following note:

"Little Rock, Ark., August 7, 1923.
"Mr. John L. Atkins,
North Little Rock, Arkansas.

"Dear Sir: Referring to our conversation, please find below memo of various rent notes maturing on or before November 1, 1923.

Crawford Romus ........................................$1,250.00
Son Lewis ............................................ 1,750.00
Wm. Holman ............................................ 250.00

"You are authorized to collect the above rent notes out of the first cotton, when picked, ginned and sold, you to furnish the Union Trust Company of Little Rock, Arkansas, each Monday morning, weekly, with statement showing amount of cotton ginned and sold and to whom sold, and to deliver the proceeds as collected to the Union

Trust Company, to be credited on the above notes until final payment is made.''

Miller further testified that he later went away on a trip, assuming that the cotton would be sold by Atkins and the proceeds applied to the payment of the rent, but, upon his return, he found that, after selling the cotton, Atkins had applied only one-half the proceeds of the crop of the sharecroppers to the accounts of the plaintiffs at the bank. The other half had been credited to the accounts of the sharecroppers with the company. This suit was brought against the company to recover the proceeds of the sale of the sharecroppers' cotton.

There are but few questions of fact in the case, the principal one being the capacity in which Atkins acted in selling the cotton, it being one of the contentions of the company that Atkins was a mere trustee, whose actions herein set out did not render it liable for the proceeds of the sharecroppers' cotton, although this money was received and applied by it to the credit of the sharecroppers' accounts.

Another statement of this contention is that the company had nothing to do with the cotton or proceeds of the sale, except that Atkins placed cash in the hands of the company as trustee to hold and pay out on the order of Atkins, who bought cotton for the Lesser-Goldman Cotton Company, when Atkins made out tickets showing the sum due for cotton purchased and to whom the money should be paid, and that, in selling the cotton pursuant to the authority conferred in the note from Miller, set out above, Atkins was not the agent of the company, and the company is not therefore liable for the destruction of the plaintiffs' landlord's lien.

It is also contended that the plaintiffs did not show such ownership of the land as authorized them to maintain this suit for conversion, there being no relation of landlord and tenant between the plaintiffs and the company, and further, that it was not shown that the plaintiffs had not been paid their rent.

It is finally insisted that, as the cotton had been sold to a purchaser having full knowledge of the existence of a landlord's lien, and that the rent had not been paid, the plaintiffs should have attached the cotton in the hands of the purchaser, and therefore the cause, which was brought in equity, should have been transferred to law and the plaintiffs required to proceed against the purchaser of the cotton.

The chancellor held the company liable for the conversion of the half interest in the crop belonging to the sharecroppers, and this appeal is from the decree entered in accordance with that holding.

It may be first said that we think the undisputed testimony shows that the plaintiffs were the owners of an undivided half each of the land on which the crops were grown, and they therefore had a landlord's lien on the crops to secure the payment of their rent. Moreover, Atkins was constituted agent for the plaintiffs to collect their rents, and, having acted in that capacity, he must account to his principals as such. Under the agreement Atkins undertook to collect the rent for the plaintiffs, and, under this authority, he sold the cotton and paid them one-half of the proceeds, and he will not be heard to question the authority under which he acted.

We think it a mere play upon words to attempt to distinguish between Atkins and the company in the conversion of this cotton. Miller testified that it was understood in his conversation with Atkins, prior to writing the note set out above, that Atkins was the president of the company, and the purpose of the arrangement was to enable Atkins to protect the interests of the company. The undisputed testimony shows that, after each sale of cotton, the company remitted one-half of the proceeds to the Union Trust Company, the depository designated in the Miller note, and these letters were written and signed by the company by Atkins as president. Moreover, the undisputed testimony shows that the proceeds of the sale of the interests of the sharecroppers were

credited on the books of the company to the accounts of these sharecroppers, so that there can be no question but that the company was a party to and the beneficiary of the conversion of the cotton.

As to the proposition that the testimony did not show that the rent had not been paid, but little need be said. Atkins handled and sold all the cotton, and the statement rendered by the company of the sales of the cotton showed that the total proceeds of all the cotton paid only a small part of the rent.

It is conceded that the sharecroppers were liable only for the pro rata portion of the rent due on the land cultivated by them, but the proceeds of the sale of their cotton were insufficient to pay that part. During the progress of the trial the court stated that the plaintiffs would have to make a showing that the rent due upon the land of each subtenant was more than the amount of rent received by the plaintiffs, whereupon counsel for the company stated: "Counsel: It is much less. I will make a statement for the stenographer. The amount of cotton raised by each subtenant produced less revenue than the amount of rent due from each said subtenant." This admission was evidently made to avoid the delay of proving what was obviously a fact easily susceptible of exact proof.

There was no waiver here of the landlord's lien in favor of Atkins or the company. The agreement authorized Atkins to sell the cotton, and the title to the cotton passed to the purchasers free of the landlord's lien, but that fact did not deprive the plaintiffs of their right to sue for the money paid for the cotton. The company was a mortgagee, and authority to it to sell the cotton and apply the proceeds to the payment of the landlord's rent was not a waiver of the lien. *Bigham* v. *Cross,* 69 Ark. 581, 65 S. W. 101; *Foster* v. *Bradney,* 143 Ark. 319, 220 S. W. 811; *First Nat'l Bank* v. *DuVall,* 156 Ark. 377, 246 S. W. 471.

Under the facts stated, the proper action was brought to impress the lien on the proceeds of the cotton. The

sale of the cotton was authorized by the plaintiffs, and a suit at law by attachment to enforce the lien against the purchasers who had bought with knowledge of the landlord's lien would have involved a repudiation of the contract of agency under which the cotton was sold, even though the cotton could have been found.

The right here asserted is that of the landlord to sue one who has knowingly converted cotton upon which a lien exists, for the proceeds of such conversion, to the extent of the debt secured by the lien. This right was asserted in the early case of *Reavis* v. *Barnes,* 36 Ark. 575, and has since been frequently reaffirmed. Two of the later cases on the subject are *Sledge & Norfleet Co.* v. *Hughes,* 156 Ark. 481, 247 S. W. 1077, and *Walker* v. *Rose,* 153 Ark. 599, 241 S. W. 19, and these last cases cite other intervening cases.

In the case of *Walker* v. *Rose, supra,* it was said: "When the bank, through its cashier, advised Walker (a tenant) to ship cotton to a cotton factor out of the State, the cashier knowing at the time that the appellee (the landlord) had a lien on such cotton for rents and supplies, and when the cashier received from Walker a draft on the factor for the proceeds of such cotton and used such drafts in paying Walker's indebtedness, the bank by these acts converted to its own use the proceeds of the cotton with full knowledge of the fact that the appellee had a lien upon such cotton, or its proceeds, for rents and supplies. The decree of the court holding the bank liable to the appellee for such proceeds under the circumstances was correct, as disclosed by the above proof. Having knowledge of the appellee's lien, it must be held that the conduct of the bank was tantamount to a destruction by it of such lien. (Citing numerous cases)."

The principle there announced is controlling and conclusive of this case. Here the testimony shows that Atkins, the president of the company, sold cotton upon which the plaintiffs had a landlord's lien, and the pro-

ceeds were paid to and appropriated by the company, and it is therefore liable for the sum thus appropriated, the amount not exceeding the rent.

The court allowed the company credit for $99, the expense of picking and marketing the cotton, and rendered judgment against the company for $383.05, the net balance of the proceeds of the sale of the interests of the sharecroppers, and, as this is less than the pro rata part of the rent due on the land cultivated by them, the decree is correct, and it is therefore affirmed.