DAVIS, STATE BANK COMMISSIONER, v. CRAMER.

Opinion delivered March 25, 1918.

1. EXEMPTIONS—LIFE INSURANCE—ESTATE OF DECEASED HUSBAND AND FATHER.—Kirby's Digest, § 5212, exempts from the claims of creditors out of the estate of a husband and father, a sum not exceeding $300 to pay insurance premiums on policies issued on his life for the benefit of his wife and children.

2. EXEMPTIONS—CONSTRUCTION OF EXEMPTION STATUTES.—Exemption statutes should be given a liberal construction.

3. EXEMPTIONS—PAYMENT OF LIFE INSURANCE PREMIUMS.—The burden is upon the widow and minor children of deceased to prove by a preponderance of the testimony that the annual premium paid· by deceased on policies of life insurance for the benefit of his wife and children did not exceed annually the sum of $300.

4. FRAUDULENT CONVEYANCE—TRANSFER OF LIFE INSURANCE POLICY—INSOLVENCY.—Deceased held a policy of life·insurance payable to his estate; after the same had attained a surrender value of $250, deceased transferred the policy to his sister and minor son, deceased being at the time insolvent. *Held,* the transfer constituted a fraud on deceased's creditors.

5. ADMINISTRATION—TIME OF PRESENTATION OF CLAIM.—A claim against the estate of a deceased person is barred when not presented within one year after the appointment of the administrator.

6. FRAUDULENT CONVEYANCE—INSURANCE POLICY—RIGHT OF CREDITORS—STATUTE OF NONCLAIM.—Deceased, in fraud of creditors, transferred a policy of insurance on his life, made payable to his estate, to his sister and minor son. Appellant, a creditor, failed to present his claim to the administrator within one year after the latter's appointment. *Held,* the claim of appellant, to collect his claim out of the proceeds of the insurance policy, was barred by the statute of nonclaim.

7. FRAUD—INSOLVENT DEBTOR—TRANSFER OF LIFE INSURANCE POLICY.—A transfer of a life insurance policy from deceased's estate to

near relatives, is not fraudulent as to creditors, unless the transfer carried with it some property value that could be subjected by a creditor to his claim.

8.  INSURANCE—VALUE OF POLICY BEFORE DEATH.—The only pecuniary or property value that an insurance policy has before the death of the insured, is the value that the insurance company would have to pay the insured or his assigns on such policy in case the same was for any reason forfeited or surrendered.

9.  INSURANCE—LIFE POLICY—INTEREST OF INSURED.—The surrender value is the only property that the assured has in a policy of life insurance on his life.

10. INSURANCE—LIFE POLICY—NO DUTY TO INSURE FOR CREDITORS.—A debtor is under no legal obligation to insure his life for the benefit of his creditors.

11. INSURANCE—RIGHTS OF CREDITORS IN LIFE POLICY.—Until the death of the insured nothing except the cash surrender value of an insurance policy is property, within the meaning of the statute declaring fraudulent conveyances and assignments void.

12. INSURANCE—CLAIM OF CREDITOR—FRAUDULENT CONVEYANCE—SURRENDER VALUE.—The creditor of an insolvent debtor may recover from the latter's estate, only the surrender value of a life policy, at the time of the debtor's death, the debtor having transferred the policy in fraud of creditors.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed in part and affirmed in part.

*Sam T.* and *Tom Poe, Harnwell & Young* and *Moore, Smith, Moore & Trieber,* for appellants.

1. The fraudulent conveyance should have been set aside to the extent of appellants claim, and not merely to the extent of the cash surrender value of the policy. 84 Mich. 625; 48 N. W. 159; 82 N. Y. Supp. 302; 83 App. Div. 419; 74 N. E. 1116; 80 Ala. 555; 2 So. 114; 124 Ala. 213; 12 R. C. L. par. 149; 100 Ark. 573; 33 *Id.* 575; Ann. Cases, 1912 B. 896; 1 Remington on Bankruptcy, 16. See also, 53 N. J. Eq. 282; 31 Atl. 272; Kirby's Digest, § 5212; 12 R. C. L. 510; 124 Atl. 213.

2. There was no consideration for the transfer. 49 Ark. 20; 73 *Id.* 174; 76 *Id.* 252; 108 *Id.* 164; 79 *Id.* 215.

3. The policy was valuable and given away. It was not part of Jones' personal property exemptions. 52 Ark. 547.

4. The child Gus K. Jr. is not protected by § 5212 Kirby's Digest.

5. The Bankruptcy Act is not operative unless bankruptcy proceedings intervene.

6. The bank commissioner's cause of action is not barred by non-claim, 77 Ark. 60; 23 *Id.* 163-5; 105 *Id.* 494; 18 Cyc 464, note 27; 30 Iowa 371; 15 Pac. 28.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee, Union Trust Co. and Katharine House, curator.

1. The vendible or surrender value of the policy at the time the transfer was made, is the only thing involved. Kirby's Digest, § 3228; 68 Ark. 398; 15 Fed. 535, 538; 77 Ark. 60; 98 *Id.* 343; 116 *Id.* 535. No fraud or bad faith in the transfer was shown. 16 Ind. App. 677; 99 Pa. St. 133, 51 S. W. 5; 23 Atl. 154; 25 N. E. 706; 45 *Id.* 1116; 46 Am. Rep. 1; 75 N. W. 877.

The title of the trustee in bankruptcy relates back to the time the proceedings were instituted. 228 U. S. 474, 479, 459.

The only thing put beyond the reach of creditors by a fraudulent transfer is the surrender value. Cases *supra.*

2. The surrender value was trifling. 61 Conn. 240; 23 Atl. 154-6; 51 S. W. 5; 64 S. W. 642; 58 *Id.* 473; 90 N. W. 387, 390; 94 *Id.* 677; 98 *Id.* 303; 21 So. 48; 3 S. W. 203; 32 Pac. 1055; 41 W. Va. 140; 67 Me. 186; 15 Gray (Mass.) 590; 28 Minn. 544. If no fraud is intended the assignment is valid. 99 Pa. St. 133; 46 Am. Rep. 1; 26 N. E. 1051; 128 U. S. 195, 211. See also, 2 Bland. 33; 69 Ill. 541, 79 Ark. 399; 31 *Id.* 652-7; 68 *Id.* 102; 79 *Id.* 399.

3. There was adequate consideration for the transfer and it was not fraudulent. 80 Ala. 555; 13 Col. App. 15; 52 Atl. 34; 203 Pa. St. 82; 56 Pac. 209; 2 So. 114.

4. The claim of the bank commissioner is barred by non-claim. 18 Ark. 334; 80 *Id.* 103; *Ib.* 523; 94 *Id.* 30;

97 *Id.* 492, 546; 51 Ala. 543; 3 Tex. 192; 49 Am. Dec. 738; 5 La. Ann. 487; 31 Miss. 660; 20 Ore. 78; 25 Pac. 140; 20 Cyc. 428; 67 Ark. 325. See also, 28 Ark. 267; 29 *Id.* 74; 41 *Id.* 523; 43 *Id.* 464; 61 *Id.* 527.

5.    As to the minor child the insurance was exempt. Kirby's Digest, § 5212; 31 Ark. 652; 68 *Id.* 102; 79 *Id.* 399; 15 Mo. 166; 95 Tenn. 505; 64 Md. 316; 98 Ill. 58. This cause should be reversed on the cross-appeal and the entire fund with interest paid to appellees.

*J. W. & J. W. House, Jr.,* for Lottie V. Cramer.

1.    Jones was not insolvent and had ample property to pay his debts at the time of the assignment. 26 Ark. 20; 12 *Id.* 146; 9 *Id.* 482; 18 *Id.* 124; 58 Atl. 745; 83 S. W. 771.

2.    If he was, there was no fraud as he was entitled to his personal exemptions. 79 N. E. 895; 54 Ind. 501; 95 *Id.* 347; 55 Am. Rep. 724. A disposal of exempt property is not fraudulent. 39 Ark. 571; 33 *Id.* 762; 52 *Id.* 101; 44 *Id.* 180; 43 *Id.* 429; 57 *Id.* 242; 31 *Id.* 554; 52 *Id.* 547; 57 *Id.* 331. See also, 99 *Id.* 45; 49 *Id.* 301; 79 *Id.* 399. If the transfer is set aside for fraud the exemption rights revive. 33 Ark. 454; 44 *Id.* 181; 49 *Id.* 299; 79 *Id.* 399. The rights would inure to Mrs. Cramer and Gus K. Jones, Jr. 58 S. C. 280.

One may give away exempt property and when the title has passed to the donee the property is not subject to execution on attachment, without regard to the donor's motives. 55 Wisc. 340; 44 Ia. 613; 86 Ind. 543; 56 Wisc. 178. See also, 100 Va. 207; 53 L. R. A. 438, 441.

3.    The policy was exempt under the Federal statute. 205 U. S. 202; 228 *Id.* 459, 474, 479; 142 Fed. 447; 118 *Id.* 632; 182 *Id.* 718; 188 *Id.* 702; 192 *Id.* 1005; 209 *Id.* 766; 221 *Id.* 56; 227 *Id.* 1011; 228 U. S. 459, 473-4, 479; 77 Va. 168. The withdrawal value is all the creditor is entitled to. 132 Fed. 927; 103 *Id.* 783; 65 Ind. 347; 98 *Id.* 78; 104 *Id.* 968; 171 *Id.* 268, 570-1.

4. The transfer or change of beneficiary was not fraudulent. 45 S. W. 673-5; 128 U. S. 195; 84 Oh. St. 1; 53 L. R. A. 438; 29 Am. St. 358-9, 364-5, 335-345.

5. 79 Ark. 509 has not been overlooked. It is not in point. 128 U. S. 195; 29 Am. St. 360-4.

6. The change of beneficiaries was for a valuable and adequate consideration. 75 Ark. 191; 26 *Id.* 360; 1 Beach Mod. Law of Cont., § 642.

7. The claim is barred by non-claim. 97 Ark. 554; 66 *Id.* 327; 49 *Id.* 75; 48 *Id.* 304; 105 *Id.* 95.

8. Review appellants authorities and contend that the cause should be reversed on cross-appeal and that the entire fund be paid to appellees.

### STATEMENT OF FACTS.

On May 19, 1915, John M. Davis, State bank commissioner recovered judgment against Gus K. Jones in the sum of $2,219.45; on June 10, 1915, Davis obtained judgment against Jones in the sum of $1,094.98. Jones carried an insurance policy in the Union Central Life Insurance Company for the sum of $10,000, originally payable to his estate. The policy among other things provided, "the assurer shall have the option at any time to change the beneficiaries. Said change to take effect and by endorsement on the policy by the assurer and the Company."

On May 5, 1914, Jones transferred the insurance to his sister Mrs. Lottie V. Cramer and to his son Gus K. Jones, making them the beneficiaries by proper endorsement of the policy.

Jones died October 8, 1915. At that time nothing had been paid on the judgments in favor of Davis, the bank commissioner. After the death of Jones, Davis having learned of the transfer by Jones of his insurance policy, instituted this suit to set same aside. He alleged that such transfer was made while Jones was insolvent and with the intent on his part to hinder, delay, and defraud his creditors; that the transfer was voluntary and

without consideration. The complaint was filed October 26, 1915.

The defendants in the suit were the Union Central Life Insurance Company, Mrs. Lottie V. Cramer, Union Trust Company and Mrs. Katherine House as curators of Gus K. Jones, Jr.

Jones had borrowed on the policy and the amount less the sum due on the policy, towit, the sum of $8,485.00 was deposited in the registry of the court by the insurance company, and the insurance company was discharged.

One W. H. Giles, a creditor of Jones, intervened setting up that Jones was indebted to him for the sum of $681.00 with interest from December 17, 1913, at ten per cent per annum. He alleged that the transfer of the policy was a fraud as to him and asked that it be so declared and set aside.

The defendants Mrs. Lottie V. Cramer and the curators of Gus K. Jones, Jr. filed separate answers in which they denied the alegations of the complaint. Mrs. Cramer alleged that there was a consideration for the transfer of the policy to her; averred that the cash surrender value of the policy at the date of the transfer was $250.00; that this sum together with the other personal property owned by Jones at the time of his death was less than the amount of exemption allowed by law. She pleaded section 70 A of the National Bankruptcy Act—relating to the redemption by the bankrupt from the trustee in bankruptcy of the bankrupt's insurance policies at their cash surrender value, and pleaded also that plaintiff had not complied with the statute of nonclaim.

The curators of Gus K. Jones, Jr., adopted the answer of Mrs. Cramer and in addition pleaded that no process of revivor had been issued on the judgments held by the bank commissioner; that the annual premium on the insurance policy in question did not exceed the sum of $300, and they pleaded that the proceeds of said policy were therefore exempt.

On the evidence adduced at the hearing the chancellor found that Jones was insolvent; that he had no actual intent to defraud creditors but that the transfer of the policy constituted a fraud upon the rights of the creditors and set the same aside. The court held that the amount available to the creditors under the policy was its cash surrender value at the date of the transfer, which amounted to $250.00.

The court entered decree giving the bank commissioner the preferential right in the sum of $250 directing that this sum be paid towards the satisfaction of his claim and that the balance of the fund in the registry of the court, after deducting the cost of the suit be divided equally and paid to Mrs. Cramer and the curators of Gus K. Jones, Jr.

Davis and Giles have duly prosecuted an appeal to this court and appellees have been granted, by this court, a cross-appeal.

WOOD, J. (after stating the facts). It can serve no useful purpose to set out and discuss the evidence relating to the issue of insolvency. A preponderance of the evidence shows that at the time of the change of the beneficiaries and the transfer of the policy by Jones to Mrs. Cramer and his son, Gus K. Jones, Jr., that Jones, the insured, was insolvent. We have reached the conclusion also that the preponderance of the evidence shows that the transfer by Jones of the policy in controversy to his sister and son was voluntary. These are purely issues of fact and we deem it unnecessary to do more than merely announce our conclusion.

Appellees on their cross-appeal contend that inasmuch as the surrender value of the policy was $250.00 that this amount was exempt to Jones under the provisions of § 5212 Kirby's Digest. That section provides: "It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband, for any definite period,

or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of her insurance becoming due and payable by the terms of the insurance shall be payable to her and for her use; and in case of the death of the wife before the decease of her husband, the amount of the said insurance may be made payable to his or her children, for their use, and to their guardian, for them, if they shall be under age, as shall be provided in the policy of the insurance; and such sum or amount of insurance so payable shall be free from the claims of the representatives of the husband, or any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds of property of the husband shall exceed the sum of three hundred dollars.''

(1-2) It is the obvious purpose of this statute to exempt from the claims of the creditors out of the estate of the husband and father a sum not exceeding $300.00 to pay life insurance premiums on policies issued on his life for the benefit of his wife and children. Under the strict letter of this statute it could not apply to the facts of this record. But exemption statutes are always given a liberal construction with a view of effectuating the liberal purpose of the Legislature in enacting them and the strict letter is never adhered to where it results in killing the spirit of the law. Our own court has adopted the rule of giving such statutes a very liberal construction. *Probst & Hilb* v. *Scott,* 31 Ark. 652; *White* v. *Swann,* 68 Ark. 102; *Hoskins* v. *Fayetteville Grocery Co.,* 79 Ark. 399.

Laws exempting a reasonable sum out of insolvent debtors' estates to provide insurance for their wives and children have received a liberal construction in other jurisdictions. The Supreme Court of Missouri, in *Judson* v. *Walker,* 155 Mo. 166, construing somewhat similar statutes, says: ''These statutes are now pronounced by the courts praiseworthy, and construed with liberality. Of this nature is the statute which authorizes a husband, even though insolvent, to devote a limited amount to pro-

viding, by way of insurance on his life, for the relief of his widow after his death. That statute is also to be construed liberally in furtherance of its benevolent purpose." See *Rose* v. *Wortham*, 95 Tenn. 505, 32 S. W. 458; *Elliott* v. *Bryan*, 64 Md. 368; *Cole* v. *Marple*, 98 Ill. 58.

(3) But to avail themselves of this statute the burden was upon the curators of Gus K. Jones, Jr., to prove by preponderance of the evidence that the annual premium paid by Jones on the policy in controversy and other policies for the benefit of his wife and children did not exceed annually the sum of $300. See *Blythe* v. *Jett*, 52 Ark. 547.

We do not find in the abstracts any testimony to prove that the $250 surrender value was exempt under section 5212, *supra*. Nor was there any proof that the cash surrender value of the policy ($250) was exempt as part of Jones' personal estate. For aught appearing to the contrary, Jones' personal estate may have been worth more than five hundred dollars exclusive of the $250 cash surrender value of the policy.

But counsel for the appellees, as cross-appellants, contend that the transfer was not fraudulent because Jones, even though insolvent, had the right, in the absence of an actual intent to defraud creditors, to appropriate a reasonable sum out of his personal estate, over and above his exemptions, to pay premiums on insurance in a reasonable sum, for the benefit of his minor son. To support this contention counsel cite the leading case of *Central Bank of Washington* v. *Hume*, 128 U. S. 195, where it is held, quoting syllabus: "A married man may rightfully devote a moderate portion of his earnings to insure his life, and thus make reasonable provision for his family after his decease, without thereby being held to intend to hinder, delay or defraud his creditors, provided no such fraudulent intent is shown to exist, or must be necessarily inferred from the surrounding circumstances." Several other cases are cited and relied on to the same effect.

The distinguished author of American State Reports in a note to *Hise* v. *Hartford Life Ins. Co.*, 29 Am. St. Rep. 358, 364, says: ''The great weight of the later authorities is in accord with the rule established in *Central Bank of Washington* v. *Hume, supra,* to the effect that an insolvent husband or his wife may insure his life and keep such insurance alive for the benefit of the wife and their children, or the husband may insure his life in his own name and subsequently assign it for the benefit of his wife and children, his children alone, or his next of kin, without thereby being held to hinder, delay or defraud creditors, and after his death they will have no interest in the insurance money, but it will belong to the beneficiary absolutely.''

(4)  But we shall refrain from either approving or disapproving the above doctrine until we have a case where the facts call for a decision of the precise question. In *Bank* v. *Hume, supra,* applications signed ''Annie G. Hume, by Thomas L. Hume,'' her husband, were made for insurance upon the life of Thomas L. Hume. The policies were issued and Mrs. Hume was named as the beneficiary. In one of the policies the application was made by Hume on behalf of his wife and children. It thus appears that the policy was issued on application of Mrs. Hume, who had an insurable interest in her husband's life. The policy was the property of Mrs. Hume from the beginning. The court upon these facts announced the doctrine as stated in the syllabus above quoted. The court in the course of the opinion says: ''The obvious distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life and payable to himself or his legal representatives, and payable by a person upon the insurable interest of his wife and children and payable to them, has been repeatedly recognized by the courts.'' In *Hendrie & Bolthoff Mfg. Co.* v. *Platt,* 56 Pac. 209, where the insurance was taken out by the husband in favor of his wife and children, after approving fully the doctrine of the Hume

case, the court at page 211 says: "The contrary might be urged with some force if the insurance arose from a policy taken out by a debtor in favor of his own estate payable to his executors, administrators, or assigns, and which had afterwards during insolvency been assigned to his wife." Conceding, therefore, but without so holding, that the doctrine of the Hume case is sound upon the facts there presented, that doctrine can have no application to the facts of this record which are entirely different. Here the policy was made payable to the estate of Jones, and after same had been in force long enough to have created a surrender value of $250 was transferred to his sister and son. There is no proof as to the amount withdrawn to pay premiums, and there are other facts which differentiate this case from the Hume case. Under the facts of this record it suffices to say that the court was correct in holding that the transfer constituted a fraud upon the creditors of Jones.

Appellees contend that the claim of appellant Bank Commissioner was barred by the statute of nonclaim.

(5) The claim of the Bank of Leola was not presented to the administrator of the estate of Gus K. Jones within one year after the appointment of said administrator. The debt in favor of the bank against the estate of Jones was therefore barred. Revised Statutes, section 80, as amended by the act of May 28, 1907, page 1170.

(6) But appellant, Bank Commissioner, contends that the proceeds of the insurance policy now in the registry of the court do not and can not belong to Jones' estate; that the suit over the title to this fund is exclusively between the parties to the present appeal. He contends that the statute is a bar only as to remedies against the estate and that this suit does not seek to enforce any claim against the estate of Gus K. Jones.

This contention can not be sustained for the reason that the suit is one to set aside an alleged fraudulent conveyance of property, that but for such conveyance would belong to the estate of Jones, and there would be no basis

for the suit at all except upon the assumption that the transfer was fraudulent and that the property transferred, therefore, notwithstanding the conveyance, belonged to the estate of Jones.

The Southern Trust Company, as the administrator of Jones' estate, filed an intervention, and asked that if the transfer of the policy were set aside that the amount of the proceeds be turned over to it.

So in reality the suit is nothing more nor less than an effort on the part of appellants to subject the property of Jones to the payment of their claims. The appellants do not assert any title or right of property in the funds and have no right or title therein. They are asking that the transfer of the funds be set aside because fraudulent and therefore void, leaving the property just as it was before such transfer. They asked that this may be done in order that they may further seek the process of the court to subject the funds to the payment of their claim.

Counsel for appellants say that the matter is practically settled in the case of *Fred v. Asbury*, 105 Ark. 494, where we said: "The statute of nonclaim does not refer to claims of title or for the recovery of property for the reason that claims of such a character can not in any just sense be said to be claims against the estate of the deceased. On the contrary, the right to recover is based upon the fact that the property claimed does not belong to the estate, but belongs to the parties asserting title to it." This doctrine can not have any application here for the reason already stated, that appellants are not claiming any right of property in the funds but are only seeking to subject the funds as the property of the estate of Jones to the payment of their claim against his estate.

The debt being barred, a mere remedy for its enforcement "bottomed solely upon the debt or demand, and having no independent form and foundation," can not be maintained. *McKneely* v. *Terry*, 61 Ark. 527. See also *Linthicum* v. *Tapscott*, 28 Ark. 267; *Waddell, Admr.,* v. *Carlock*, 41 Ark. 523; *Stephens* v. *Shannon*, 43 Ark. 464.

It follows that the court erred in entering a decree in favor of the appellant Bank Commissioner for the sum of $250.

The claim of the appellant Giles was duly probated and allowed, therefore he had a right to pursue his remedy to set aside the fraudulent transfer and to subject the unexempt property of Jones to the payment of his claim. This brings us to the consideration of the question as to what property value Jones had in the policy that could be subjected by the creditors to the payment of his debts.

A man must be just to creditors before he can be generous to relatives. Therefore, where an insolvent debtor makes a voluntary transfer of his property, which is not exempt under the law from his debts, to those who are near of kin, whether he intends it as a fraud or not, it operates as a fraud on his creditors for the reason that such a transfer hinders, delays or defeats them in the collection of their claims. *Wilks* v. *Vaughan,* 73 Ark. 174; *Simon* v. *Reynolds-Davis Gro. Co.,* 108 Ark. 164.

(7) Under the terms of the policy Jones had the option at any time to change the beneficiary. So the changing the beneficiary from his estate to his sister and his son was within his rights under the contract. This act of itself could not operate as a fraud upon his creditors even though Jones at the time of the transfer was insolvent and the transfer voluntary unless the transfer carried with it some property value that could be subjected by the creditor to his claim. *McCutcheon's Appeal,* 99 Pa. St. 133.

(8) The only pecuniary or property value that an insurance policy has before the death of the insured is the value that the insurance company would have to pay the insured or his assigns on such policy in case the same was for any reason surrendered or forfeited. This is necessarily so because, except as to the premiums already paid and the policy values already accrued under its terms, the contract is purely executory. To keep the contract alive until the death of the insured he, or some one for him, must pay the premiums and he must comply with

such other provisions of the policy as relate to his personal conduct, such, for instance, as not engaging in any hazardous undertaking or residing in prohibited territory, etc., if such be forbidden.

The purpose of our statute declaring void the conveyance or assignment made in fraud of creditors is to enable the creditors to set such conveyance or assignment aside and to subject the property therein conveyed to the payment of their claims. In *Continental National Bank v. Moore,* 82 N. Y. Sup. 302, it is held: "Where an attempted assignment of an insurance policy was set aside as fraudulent as against the insured's creditors, and the insurance had become payable by the death of insured before the judgment annulling the transfer, the entire insurance inured to the benefit of creditors, and not merely the cash value thereof." In that case the court said: "The case is not, we think, distinguishable in principle from those holding that, where a transfer of property made by a debtor is set aside on the ground of fraud at the instance of his creditors, their rights attach, not merely to the value of the property prior to the assignment, but to the property itself, including appreciation or increase in value." In the above case the facts showed an actual intent to defraud creditors.

The Supreme Court of Alabama also holds that where an insolvent debtor invests his funds in the payment of the premiums on a policy of life insurance in favor of relatives, on the death of the assured, creditors may subject the entire proceeds of the policy to the payment of their claims. That court says: "The insurance constituted the property purchased and is the subject matter of the investment. * * * If the subject of the gift or investment consists of a policy of insurance on the life of the debtor the donee is liable for the money recovered on the policy." *Fearn* v. *Ward,* 80 Ala. 555-564. See, also, *Lehman* v. *Gunn,* 124 Ala. 213.

The Supreme Court of New Jersey seems to entertain the same view, for that court, through Mr. Justice Pitney, in *Merchants & Miners Transportation Co.* v. *Borland,* 53

N. J. Eq. 282, 286, 287, says: "There is, and can be in law, no difference between the payment by a husband of a stated sum of money at stated periods to an insurance company, upon promise to pay a certain sum at the death of the payer, to his wife, and the deposit by the husband of a like stated sum, at like stated periods, in a savings bank, to the credit of the wife. Both are gifts to the wife, and the money afterwards paid by the savings bank or the insurance company, as the case may be, to the wife or her personal representatives, is nothing more than a payment to her of the money previously paid to it by the husband, with its earnings and increase. * * * A husband can not settle money or property in any shape upon his wife while he is indebted. If he attempts it the creditors are entitled to the aid of this court to reach the property so settled, in whatever form it may be found."

(9) Counsel for appellant rely upon the above cases to sustain their contention that they are entitled to have the proceeds of the policy in the registry of the court apply to the extinguishment of their claim, *pro tanto;* that the transfer being fradulent in law, the entire proceeds of the policy are assets of Jones' estate, which may be subjected to the payment of his debts. But the doctrine of the above cases is unsound for the reason that it is predicated upon the false premise that the amount specified in the contract of insurance to be paid upon the death of the assured is the property of the debtor which he attempted to place beyond the reach of his creditors by the fraudulent transfer. This can not be so, because, as already stated, the full face value of the policy is not property which the creditors can reach by any process for the payment of their claims before the death of the assured. The full amount of the policy is a mere expectancy, depending upon the performance of certain conditions and the happening of a certain contingency. It is therefore not subject to execution. The surrender value is the only property that the assured has in the policy. The full face value does not become property, or a chose in action even, until the performance of the conditions and the happen-

ing of the contingency upon which the payment of the policy may be enforced.

Where a fraudulent conveyance or assignment is set aside, the effect and the only effect is to make available for the payment of his debts such property as the debtor possessed and that would have been subject to legal process for the payment of his debts at the time the transfer was made. This is the only right the creditors have under our statute.

(10) "A debtor is under no legal obligation to insure his life for the benefit of his creditors." See *Lytle et al.* v. *Baldinger et al.*, 23 Am. & Eng. Ann. Cas. 894-5.

(11) Until the death of the assured nothing except the cash surrender value of an insurance policy is property, in the meaning of the statute declaring fraudulent conveyances and assignments void. How then can it be said that an insolvent debtor made a fraudulent transfer of that which did not exist during his life? It is impossible. See *Hendrie & Bolthoff Mfg. Co.* v. *Platt, supra.*

(12) The decree of the court as to Giles should be modified and a decree rendered in his favor appropriating the entire $250 surrender value to the payment of his claim. The complaint of the Bank Commissioner should be dismissed. In other respects the decree is affirmed. The case will be remanded with directions to the chancery court to enter a decree in accordance with this opinion and make such other and further orders as it may deem necessary and not inconsistent with this opinion, to properly distribute the fund in the registry of its court.