Fox *v*. Pinson.

Opinion delivered October 7, 1929.

*Powell, Smead & Knox* and *Coulter & Coulter,* for appellant.

*Marsh, McKay & Marlin* and *Joiner & Stevens,* for appellee.

BUTLER, J.   A decree was rendered in this case by the chancery court by which judgment was rendered on two mortgages given by Yetta C. Fox to J. W. Pinson.

The mortgages were foreclosed, the property described therein ordered sold, and a commissioner appointed to make said sale. An appeal was prosecuted to this court from the judgment and decree, without the same having been superseded. Pending the appeal in this court, the commissioner appointed by the chancery court proceeded to carry out the decree by advertising the property for sale on a stated day, and on the day fixed in the decree and notices the property was offered for sale, and appellant, George W. James, became the purchaser for the sum of $24,500, which was paid. The commissioner made report to the court, the sale was approved, and a deed to the purchaser executed and delivered. The purchase money was ordered paid into the court, with an order and directions to the clerk to make distribution. The money was paid into the court, and the clerk distributed it as directed. There were no exceptions filed to the report of the commissioner or objections made to the order of distribution, all the parties appellant and appellee being parties to the proceedings hereinbefore recited, except appellants Anders, Samuels, Coleman, McGlasson, Coulter and McNeil.

Subsequent to the sale, confirmation, payment of purchase price and its distribution, the judgment and decree of foreclosure was reversed, and the cause remanded. *Fox* v. *Pinson,* 172 Ark. 449, 289 S. W. 329. After the remand, plaintiff Yetta C. Fox filed her cross-bill against appellants Pinson and James. A demurrer was sustained, and an appeal taken from the order sustaining the demurrer, which was by this court reversed, *Fox* v. *Pinson,* 177 Ark. 381, 6 S. W. (2d) 518, and, after the second remand, additional testimony was given. At the conclusion of the testimony, and before the submission, Yetta C. Fox took a voluntary nonsuit as to her cross-complaint. The court rendered its judgment and decree, and this case is here on its third appeal.

By reason of the number of parties to the action and their conflicting claims, the decree is voluminous and in-

volved, and will not be copied here in its entirety, but such portions of it and the facts established necessary for the determination of the rights of the parties will be hereinafter stated.

■ At the threshold of this appeal the question arises, what are the rights of George W. James, purchaser at the sale made by virtue of the orders contained in the first decree of the chancery court? Appellant Fox and others say he has no rights and no interest in the property, because the decree was a nullity, being void *ab initio,* and they cite as authority an expression of this court in *Fox* v. *Pinson,* 177 Ark. *supra,* in which reference is made to the sale to James as "a void foreclosure sale." The question of the validity of the decree or the sale made pursuant thereof was not before the court, nor was the court attempting to pass thereon. The language was clearly descriptive in its character, and related to James, a new party to the action. It is clear also that the word "void" was not used in its meaning of nullity, but in the sense implying error, which use is well recognized by courts and lexicographers. Words & Phrases, p. 876; Bouv. Law Dict. Rawles 3d Rev. *3406; *Mobbs* v. *Millard,* 106 Ark. 563, 153 S. W. 821; *U. S.* v. *Winona, etc. Co.,* 67 Fed. 948; *State* v. *Richmond,* 26 New Hamp. 232-237. This was the only sense in which the word could have been used in 177 Ark. *supra,* because the court had in mind its decision in 172 Ark., *supra,* where the reasons for reversal are stated and where the decree was held "erroneous," as such in fact it was, because the trial court had jurisdiction of the subject-matter and the parties, so that the decree was not *coram non judice* and void, but because of errors committed, the decree was merely one which might be avoided. *Hudson* v. *Union Mercantile Trust Co.,* 148 Ark. 254, 230 S. W. 281, and cases cited.

James was a stranger to the suit, and, having purchased at a sale made in due conformity to a decree in full force, unsuspended and unreversed, is protected in

his purchase as against all persons parties to the proceedings, though the decree was afterward set aside. *Moore* v. *Woodall,* 40 Ark. 42. All the parties to this proceeding, except the six hereinbefore named, were parties to the litigation resulting in the decree. Neither they nor any one of them obtained a supersedeas of the decree. They failed to object to the sale, its confirmation, the execution of the deed to James, a stranger to the proceeding, or to the distribution of the money paid by him, and, having elected to prosecute their appeal without obtaining a suspension of the decree, it would be inequitable for them, having suffered James to part with his money, to now divest him of the land, and he is fully protected as to them. *Boyd* v. *Roan,* 49 Ark. 397, 5 S. W. 704, and cases cited; *Hudson* v. *Union Merc. Trust Co., supra.*

■ In passing on the rights of the appellee Chas. O. Austin, Bank Commissioner, successor to the First State Bank of Texas, it will be necessary to discuss the facts existing prior in point of time to the institution of this proceeding. Whatever rights he had came through John T. Finn, who, appellant Austin claims, was the owner of a one-half interest in the property, and whose mortgage to the First State Bank of Texas was executed and recorded prior to the mortgage of Pinson to the First National Bank of El Dorado and prior to the deed from Pinson to Fox, and is paramount to the claims of the other parties to this suit. The correctness of this conclusion will depend upon the interest Finn owned in the property at the time of his mortgage, which is conceded to be the elder of the various conveyances and transactions upon which the claims of the other parties are based. Before and until July 19, 1922, Finn was the owner of a leasehold covering the east 75 feet of lot 4, block 17, in the city of El Dorado. A suit was brought by various creditors of Finn wherein liens were claimed against the property, which suit, after having been pending for about a year, was terminated by a judgment and decree ren-

dered July 19, 1922, awarding judgments for large sums against Finn, declaring a lien on the property, and barring and foreclosing his equity of redemption in said leasehold interest in and to the property described above, appointing a commissioner, and ordering sale of the "leasehold interest" to satisfy the said judgments.

On the 29th day of August, 1922, Finn executed a mortgage to the State Bank of Paris, Texas, conveying "a third mortgage and all rights, claim, title and interest owned by him in the Franklin Hotel building, now known as The States Hotel, situated on the east 75 feet of lot 4, block 17, in the city of El Dorado, together with the ground lease on the said described tract of land," to secure an indebtedness of $...................... On October 10, 1922, sale of the property by virtue of the aforesaid decree was made, and W. J. Pinson became the purchaser, the sale being confirmed on the 13th of the same month, and deed executed and delivered to him, thus merging the leasehold interest with the fee of which he was and had at all times been the owner. The execution of the mortgage to the Texas State Bank was made at a time when Finn had no interest in the property, as that had been foreclosed by the decree of July *ante,* of which the bank was bound to take notice. After the foreclosure sale and purchase by W. J. Pinson, he entered into an agreement with John T. Finn as to the management of the property and its disposition. The building on the land was constructed and operated as a hotel, and was still incomplete in some of its details. Finn was a builder, and had in fact constructed the hotel, and doubtless had lost considerable money in the transaction. Pinson was desirous of disposing of the property, and agreed with Finn that the latter should finish the building, procure a purchaser, and out of the proceeds Pinson, after having deducted the value of the lot, which was fixed at $10,000, and the sums he had paid for the property at the foreclosure sale and other expenses he had incurred, would give Finn one-half of the remainder. Finn did

74

procure, through the appellant Dielman, a real estate broker, a purchaser, Mrs. Yetta C. Fox, who paid Pinson $5,000 in cash, and for the remainder, $50,000, executed 25 notes for $800 each, becoming due monthly, the first due January 1, 1929, secured by a first mortgage, and sixty notes for $500 each payable monthly, the first falling due January 1, 1924, secured by a second mortgage on the property. A settlement was made between Pinson and Finn by which twelve of the first mortgage notes and eight of the second mortgage notes were delivered to Finn, thirteen of the first mortgage notes and forty-eight of the second mortgage notes remaining in the hands of Pinson. It seems that before the settlement between Pinson and Finn four of the second mortgage notes had been paid, to whom and how the proceeds thereof were divided is not shown. There was an additional number of the second mortgage notes which would have gone to Finn, but Pinson being Finn's indorser on a note to a Drew County bank for four or five thousand dollars, these second mortgage notes were retained by Pinson to protect him as the indorser on said note. Finn is not now complaining of this settlement and has passed out of the case.

After the delivery of the first and second mortgage notes to Finn as aforesaid, he sold ten of the first mortgage notes to the Globe Petroleum Company and delivered two to the State Bank of Paris, Texas, which accepted same and applied them as a credit on Finn's note. The eight second mortgage notes passed into the hands of appellants, Anders, Coulter, and others. At no time was Finn's interest greater than the leasehold which was extinguished by the foreclosure of July, 1922, and consequently Finn had no interest to convey at the time of the execution of the mortgage to the Texas bank and intended to convey only such interest as he then had. For he expressly limited the interest conveyed by the words "now owned by me." *Blanks* v. *Craig*, 72 Ark. 80, 78 S. W. 764. The conveyance could not, therefore,

be extended so as to cover any after acquired interest. *Bunch* v. *Johnson,* 138 Ark. 396, 211 S. W. 551. It is clear that the only right of Austin is to the proceeds of the two first mortgage notes now in the custody of the clerk of the court below, and the court below erred in decreeing otherwise. All the other notes in the possession of Finn had passed into the hands of innocent purchasers for value before the institution of this suit, to which Austin's predecessor was a party, and, having acquiesced in the sale and distribution of its proceeds, he cannot now assert a claim inconsistent with such action.

■ The facts relating to the transactions of W. J. Pinson with Yetta C. Fox are sufficiently set out in the case of *Fox* v. *Pinson,* 172 Ark., *supra,* in which the court held that she was entitled, before Pinson could foreclose his mortgage against her, to have her title cleared as to outstanding prior incumbrances, and that foreclosure could not then be had except as to notes due, there being no acceleration clause contained in any of said notes, and that the chancellor erred, and the case was remanded for further proceedings in conformity with the opinion rendered. However, Yetta C. Fox, by failing to maintain the *status quo ante* of the property, has made it impossible to obtain the relief granted her. She failed to supersede the decree appealed from, permitted the property to be offered for sale, the sale to be made without objection, and suffered the money to be distributed. She must therefore be remitted to some other and further proceeding to assert her rights and recover for her injury, if any.

■ Having disposed of the contention of the appellant Austin, it follows that the rights of the First National Bank of El Dorado were paramount to that of all the parties to this litigation. The mortgage executed to it by W. J. Pinson was prior to the deed to Mrs. Fox, and contained a parcel of land in the city of El Dorado in addition to the property conveyed by Pinson to Mrs. Fox. This mortgage was made to secure a note of $20,000,

which, at the time of the institution of this suit, had been reduced to the sum of $................. It is contended that it should first exhaust its security as to other property not involved herein before being allowed to participate in the proceeds of this litigation. On the last trial of this case the court so found, but its finding and decree in that particular were not based on any evidence taken on trial, and the decree was afterwards corrected. We think this decree of the court was correct, because, as before stated, the decree in that particular was not based on any testimony given, and further, all those complaining were parties to the suit from its beginning, and participated in the distribution of the proceeds arising from the sale to James, and the motion for the marshaling of the securities was not made until long thereafter, and until after the First National Bank had been fully paid.

■ W. J. Pinson has died since the beginning of this suit, and the case was revived in the name of his administrator and heirs, and by the decree of the trial court appellant F. M. Dielman was awarded judgment against John T. Finn, and against the administrator of W. J. Pinson. The preponderance of the testimony establishes the fact that the connection Dielman had with the transactions involved in this case grew out of a contract between him and Finn for the sale of the Pinson property, and that Finn, at the time of his conversations with Dielman, represented himself to be the owner of the property. Pinson knew nothing of the arrangement between Finn and Dielman—had no connection with it. Certain of the notes of Mrs. Yetta C. Fox were given to Finn as commission for making the sale. These were delivered by Finn to Dielman, who claimed $2,000 commission. There was credit given by Dielman on his claim, and he sued for the balance of $650, with interest at six per cent. from February 13, 1925. Pinson did not agree with Finn or Dielman to pay Dielman any part of his commission, and the decree of the chancellor awarding judgment against Pinson was against a preponderance of the testimony.

■ The trial court held that appellants M. J. Samuels, J. A. Anders, C. R. Coleman, E. H. McGlasson, E. H. Coulter and F. McNeil were entitled to judgment against Yetta C. Fox as follows:

| | |
|---|---|
| M. J. Samuels | $ 703.44 |
| J. A. Anders | 703.44 |
| C. R. Coleman | 703.44 |
| E. H. McGlasson | 1,406.88 |
| E. H. Coulter | 1,406.88 |
| F. McNeil | 703.44 |

The aforesaid appellants were not parties to the suit at the time of the rendition of the first decree, but, after the remand, they intervened, claiming the ownership of eight of the second mortgage notes for the sum of $500 each, with accrued interest, and asserted their right to judgment against Mrs. Fox and W. J. Pinson, and that their claims should have priority over James as to any fund derived from the sale of the property under the Fox second mortgage; that judgment should be rendered against John H. Pinson on all notes involved in this action, and executed or indorsed in blank by the decedent, and that they have priority over James as to any funds derived from the sale of the west five feet of the property in controversy under the Fox second mortgage. It appears that all of the notes held by them, except perhaps two or three, were indorsed by Pinson without recourse. W. J. Pinson died, and John H. Pinson was duly appointed administrator, gave the necessary notices, and none of these several notes were presented to the administrator for allowance or rejection within a year after the grant of the letters of administration. So that, in any event, these notes would not be claims against the estate of W. J. Pinson, and are barred by virtue of the statute of nonclaim. *Davis* v. *Kramer*, 133 Ark. 224, 202 S. W. 239; Crawford & Moses' Digest, § 97 subdiv. 5.

As we have seen, James is the owner of the land involved in this suit as against all the parties to the

original proceeding, all of whom are parties to this suit, except Anders and others above named. By reason of the sale and purchase by James he became the equitable assignee of the rights of the parties to the original suit, and by the deed executed to him he acquired the title and interest of all the incumbrances which the sale discharged. Therefore, as to the appellants Anders and others, while not the owner of the title as against them, he will be deemed to have acquired the notes mortgaged to the National Bank of El Dorado, and the first and second Fox mortgage notes owned by the parties to the first suit. While appellants Anders and others are entitled to a judgment against Yetta C. Fox, and for foreclosure of the property on which said notes are a lien, the proceeds of the sale, before being applied to the satisfaction of their notes, should be applied to the payment of the 25 first mortgage notes, the payment of the sums due and collected by the First National Bank of El Dorado on the balance due it under its mortgage from W. J. Pinson, with interest on all of said sums according to the face of the note, and the remainder, if any, should be divided proportionately between James, owner of fortyeight second mortgage notes under his aforesaid purchase, and Anders and others, owners of eight of the second mortgage notes.

■ It seems that, under the original decree ordering a distribution of the proceeds of the sale to James, a portion of it was paid as accrued taxes on the property and costs of the proceeding, and the remainder distributed as follows: $4,593.75, sum due First National Bank of El Dorado, with accrued interest; $9,015.23, amount of ten first mortgage notes to Globe Petroleum Co.; $8,589.39 to W. J. Pinson as his distributive share; $1,801.63 to First State Bank of Paris, Texas. Each of these parties have received said sums, and the evidence shows that they were entitled to same as their share of the distributive fund arising from the purchase by James, but appellant Austin, under the court's order,

returned the amount received by his predecessor bank to the clerk of the court, to which sum he is now entitled.

We have concluded that this cause should be reversed, and remanded with directions to the chancellor to order the return of the money in the hands of the clerk to the appellee Austin, and that his intervention be then dismissed; that Yetta C. Fox take nothing in this action, and that James, Anders, Coleman, Coulter, Samuels, McGlasson and McNeil have judgment against her, each for the amount of the second mortgage notes now due held by them, or to which James is entitled by reason of his purchase; that Dielman have judgment against John T. Finn for $650, and his complaint as to Pinson, administrator, be dismissed; that the interventions of Anders and others, interveners, parties since the second remand of this cause, be dismissed as to Pinson, administrator; that the said appellants Anders and others, owners of the eight second mortgage notes, may have a lien declared, subject to the rights of James under the mortgage of Pinson to the First National Bank of El Dorado, and may have a decree of foreclosure, subject to the aforesaid rights of James, and the proceeds shall be paid to James, and to the said interveners proportionately; that all the interventions as to and against the First National Bank of El Dorado, the Globe Petroleum Company, and the estate of W. J. Pinson be dismissed for want of equity.