THOMPSON *v.* HOLLIS & COMPANY.

4-4649

Opinion delivered May 10, 1937.

*Roy D. Campbell* and *W. J. Dungan,* for appellant.

*Buzbee, Harrison, Buzbee & Wright,* for appellee.

MEHAFFY, J. This action was instituted by appellee in the Pulaski circuit court against L. A. Phillips and Vance M. Thompson, the appellant.

The complaint alleged that the appellee was a corporation engaged in the mill and supply business; that L. A. Phillips and Vance M. Thompson were jointly indebted to it in the sum of $630.16 with interest from January 1, 1936, for goods, wares and merchandise, as set out in verified account.

L. A. Phillips filed answer, in which he stated that the purchase of the goods, wares and merchandise by him was solely and only as the agent of Vance M. Thompson.

Vance M. Thompson filed answer denying all the material allegations of the complaint, and denying liability.

There was a verdict and judgment for appellee against Vance M. Thompson for the amount sued for. Motion for new trial was filed and overruled, and the case is here on appeal.

There is no dispute about the sale of the goods for the Benton Ice & Oil Company, of Benton, Arkansas. It is not disputed that the goods were received and that they have not been paid for.

The Sheridan Ice & Coal Company was incorporated with L. A. Phillips, W. J. Dungan and appellant as the only stockholders. Dungan was issued one share of the stock, or rather one share was made out to him, and he immediately assigned it back. The other stock was issued to Phillips and appellant, but Phillips did not pay anything for his stock, but pledged it to appellant to secure the payment of the stock. All the money that was put into the plant originally was put in by Thompson, and thereafter the profits of the company paid the balance that the Sheridan company owed so that all of the property of the Sheridan company was furnished by Thompson and the profits from the company. The Sheridan Ice Company sold ice at Benton for some time, and Thompson and Phillips decided to put up a plant at Benton. Phillips had no money and Thompson had ample money to finance the construction of the plant. Thompson took a deed to the property in his own name and undertook, according to his own testimony, to furnish the money to construct the plant at Benton. The plant at Benton did not prosper, became involved, and this suit is to collect for goods, wares and merchandise sold by appellee and delivered to the plant at Benton. The appellant claims that they were putting up the plant at Benton for the Sheridan Ice & Coal Company and it was not his individual property.

The appellant testified that he furnished the money to the Sheridan Ice Company to buy the property on which the Benton Ice & Oil Company plant was built; he furnished close to $7,000 or $8,000; he bought the property in his own name, and gave a contract to the effect that he would give a deed when the money was paid to him. He testified that the Sheridan Ice Company put in $100 and that he furnished the rest of the money. It developed, however, that the $100 paid by the Sheridan Company was $100 that it owed Thompson, so that Thompson really put in all the money. He testified that he was to hold the real estate as security until he was reimbursed. He had no understanding with Phillips that he was to purchase goods from Hollis & Company or elsewhere, and he did not give Phillips any authority of any kind. The plant at Benton was leased to Phillips, but he did not give Phillips any authority to buy material. He testified that he was very careful not to. He knew that Phillips could not finance the building of the plant, and he could do so; that Phillips was not his agent and had no authority to bind him.

Phillips testified that he purchased the goods from Hollis & Company and that the account was correct. He constructed the plant at Benton and it was done with Thompson's money. Thompson was to furnish the money, and he was to construct the plant. Thompson owned the property, and bought the material from Malvern Brick Company, and Phillips bought lumber from the Arkansas Lumber Company. Thompson furnished all the money at the plant at Sheridan and took Phillips' stock as collateral for his part. Thompson agreed to furnish the capital to build the plant. The material for the Benton plant was not charged to the Sheridan Company at his direction. When asked about an agreement as to the transaction, he testified that that was Thompson's agreement; that he did not sign it at all. He testified positively that Thompson authorized him to buy the material on his account and his credit. They never did have a meeting of the board of directors in the Sheridan plant; it was not necessary because there were only three of them in the concern.

Appellant contends ·that the court erred in giving instruction No. 6 requested by appellee, and instruction No. 1 requested by Phillips. Instruction No. 6 reads as follows:

"You are instructed that if you find that the defendant Phillips was acting for the defendant Thompson as his agent in purchasing the equipment in question, but did not disclose to the plaintiff that he was acting for the defendant Thompson then plaintiff would be entitled to recover from the defendant Phillips."

The appellant .argues that instruction No. 6 and instruction No. 1, given on behalf of Phillips, authorized the jury to pass upon the question of whether Phillips was the agent of Thompson in purchasing goods, wares and merchandise involved in the suit, when there are no facts in the record upon which to base these instructions. It is argued that there is no testimony to show that. Phillips was the authorized agent of Thompson, except the declaration of Phillips himself. We do not agree with appellant in this contention. Phillips' testimony shows that he was the agent of Thompson in the purchase of the goods. This is not a declaration of Phillips, but is the testimony of Phillips.

Appellant calls attention to numerous authorities to the effect that the authority of an agent must be shown by positive proof or circumstances that would justify the inference that the principal had assented to the acts of his agent; and that you can neither prove agency nor the extent- of an agent's authority by the declarations of the agent.

The court has many times held that you cannot prove agency or the extent of the agent's authority by proving the declarations of the agent, but it has always held that the testimony of the agent is competent to prove agency, although the agent's declarations are not competent to prove the fact of agency, and may only be introduced to corroborate other evidence tending to establish the fact of agency. The agent's testimony, however, is entirely different from the declarations of the agent.

*American So. Tr. Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50; 1 Mechem on Agency, par. 285.

"The rule that the declarations of an agent are, as against his principal, inadmissible to prove the fact of his agency does not apply to his testimony as a witness on the trial in which such fact is in issue; and consequently the testimony of the agent, unless he is disqualified for some other reason, is competent to establish the fact of his agency, and the existence of facts from which the agency may be inferred, at least, where the authority was verbally conferred; and to refuse to allow him to testify and be cross-examined is reversible error." 2 C. J. 933; 3 C. J. S., Agency, 274; 21 R. C. L. 820.

The weight and sufficiency of the evidence is governed by the rules applicable to the weight and sufficiency of evidence in civil actions in general. The fact of agency is established by a preponderance of the evidence, and, as in all other civil actions, the credibility of the witness and the strength of his testimony are questions for the jury. 2 C. J. 951.

"Although an alleged agent's extrajudicial statements are not admissible to prove the fact of his agency, that fact may, when it rests in parol, be established on the trial by the testimony of the agent himself; he is a competent witness to prove the agency, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject." 2 Am. Jur. 353.

Instruction No. 1 requested by defendant Phillips is lengthy, and we do not set it out in full, but appellant objects to it because he states that it is not supported by the evidence, and second, because it permits the establishment of principal and agent solely on the testimony of the agent himself.

We do not think that the objections to said instruction are well taken. What we have already said shows that the fact of agency may be established by the testimony of the agent.

It is contended that the court erred in refusing to give instruction No. 2 requested by appellant. That in-

6

struction, in effect, tells the jury that the facts recited, that is, if they find that Thompson entered into an agreement with the Sheridan Ice Company that he would furnish money and material to assist in the construction of an ice plant at Benton, and that said ice plant was to be operated by the Sheridan Ice Company as a branch, and that it was further understood that the title to the real estate and building should remain in Thompson as security until the Sheridan Ice Company should repay Thompson, then such advanced funds and material by Vance Thompson, would not constitute Thompson the owner, and would not make him liable for other materials furnished by appellee, which went into construction of the ice company plant at Benton; unless they further find that the materials purchased by the Benton Ice Company were in fact purchased by said Thompson, or his authorized agent. The evidence clearly shows that the Sheridan company was practically owned and controlled by the appellant, and that he agreed to finance the Benton company, to furnish the money, and, even if all the facts recited in instruction No. 2 were true, he would still be liable under the evidence in this case for the supplies furnished to the Benton plant.

The fact of agency and the extent of the agent's authority, the credibility of witnesses and the weight to be given to their testimony, are all questions of fact for the determination of the jury, and there is ample evidence to sustain the verdict.

We find no error, and the judgment is affirmed.