MARK *v.* MABERRY.

5-134                                    260 S. W. 2d 455

Opinion delivered June 29, 1953.

Rehearing denied October 5, 1953.

*J. B. Milham,* for appellant.

*A. J. Russell* and *Festus O. Butt,* for appellee.

Ed. F. McFaddin, Justice. This is a suit to determine priority as between two mortgagees. The Chancery Court decided in favor of Maberry; and Mark has appealed.

In 1948 Mark was the owner of certain real and personal property in Eureka Springs, known as the Allred Hotel and its furnishings. Loucks, a real estate agent claiming to act for Mark, sold the Allred Hotel and furnishings under the terms of a contract dated April 28, 1948, and reading in part:

"Received of Cecil Maberry, for a corporation to be hereafter formed, the sum of $500, as earnest money for the purchase of the Allred Hotel in the City of Eureka Springs, all furnishings and everything in connection therewith for Anson Mark, the owner of said property, and for whom I am acting as agent.

"This is on condition that $8,500 more in cash will be paid as soon as the legal papers can be drawn to carry out this contract and the abstract of Mark brought down to date, showing clear title to everything in connection with the hotel.

"It is understood that Cecil Maberry as agent for the corporation, aforesaid, is to place a Mortgage upon said property not to exceed $15,000, and that he shall give a second mortgage to the said Mark for $10,000, subject to said first Mortgage, . . .

"It is understood hereby between the parties that the said Maberry as said agent, who will expedite the drawing of the necessary papers and forming the corporation and paying the balance of the purchase money, and that upon the said Maberry, as aforesaid, completing his part of the deal, the said Mark shall at once give a Warranty Deed for the building, furniture, fixtures, equipment, and all other personal property now used in connection with the said hotel and owned by the said Mark. . . ."

In pursuance of the said contract, Cecil Maberry organized an Arkansas corporation, styled "Springs In-

vestment Company"; Mark and wife executed a Warranty Deed to Springs Investment Company, dated May 18, 1948; Springs Investment Company executed a first mortgage to Cecil Maberry to secure $15,000; and Springs Investment Company executed the second mortgage to Mark for $10,000. The $15,000 mortgage was filed a few minutes prior to the $10,000 mortgage.

On October 25, 1952, Mark filed the present suit against the Corporation, and also against Cecil Maberry,[1] J. A. Maberry, and V. M. Anderson. Mark is now claiming:

(a) that Mark's mortgage for $10,000 is prior and superior to the $15,000 mortgage held by Maberry;

(b) that Cecil Maberry, J. A. Maberry, and V. M. Anderson, as incorporators and officers of Springs Investment Company, are each personally liable to Mark for the $10,000 balance due him by the Corporation; and

(c) that a chattel mortgage executed in 1949 by Springs Investment Company to Maberry on furnishings then purchased, is junior to the $10,000 mortgage held by Mark.

As aforesaid, the Chancery decree was adverse to Mark on each contention, and he has appealed.

I. *Superiority As Between Mark's Mortgage And Maberry's Mortgage.* The mortgage held by Mark recites: "This mortgage is junior and subject to a prior mortgage for $15,000 executed by same grantor to Cecil E. Maberry . . ." Our cases hold that a mortgagee, who accepts a mortgage which recites a prior mortgage, is estopped to deny the superiority of the prior mortgage. *Clapp* v. *Halliday,* 48 Ark. 258, 2 S. W. 853; *Gibson* v. *Doughty,* 193 Ark. 1037, 104 S. W. 2d 449.

To overcome the application of the cited cases, Mark claims that this recital in his mortgage is fraudulent, was never authorized by him, and never known by him. Thus it becomes necessary to recite some of the salient testimony as to the sale of the hotel property by Mark.

[1] Mrs. Cecil Maberry was also named as a defendant.

Loucks, a real estate agent in Eureka Springs, testified that she represented Mark, and in such capacity, signed the contract with Maberry, as previously quoted. Loucks testified that she sent the contract to Hunter,[2] a lawyer in Chicago, who had theretofore corresponded with her and who claimed to be Mark's attorney. On May 18th, Mark and wife executed the deed to Springs Investment Company, conveying all the real and personal property; and the acknowledgment of that deed was taken by Robert L. Hunter, as Notary Public, in Cook County, Illinois; and that is the same name as the attorney who wrote the letter to Loucks previously mentioned. The notes and mortgage now sued on by Mark were forwarded to Mark, and Loucks received her real estate commission for closing the trade.

It is true that the agent's *declarations*—i.e., the statements in the contract of sale—are not admissible to prove agency, but only to corroborate other evidence tending to establish agency.[3] Nevertheless, the agency can be established by circumstances; and any evidence tending to establish agency is admissible, including the testimony of the agent.[4]

At the time Mark signed the deed to Springs Investment Company, he could not have known of the existence and name of such corporation, except through the agency of Loucks to execute the original contract: Mark accepted the fruit of Louck's agency for him, and cannot now be heard to disclaim such agency. *Rose City Mercantile Co.* v. *Miller,* 171 Ark. 872, 286 S. W. 1010. It

---

[2] Hunter's letter to Loucks, dated May 3, 1948, recites:
"Enclosed is the abstract of title for the Allred Hotel which Mr. Mark is selling to Cecil E. Maberry. . . . Mr. Mark has advised me that he will accept the Maberry proposition. . . . Mr. Mark is to have a second mortgage for $10,000 on the hotel including the real estate and personal property. . . . Notes are to be executed by the corporation payable as outlined in your proposal of April 28th. . . ."

[3] *Thompson* v. *Hollis,* 194 Ark. 1, 104 S. W. 2d 1065. See, also, other cases collected in West's Ark. Digest, "Principal and Agent," Key No. 22.

[4] *Moore* v. *Ziba Bennitt,* 147 Ark. 216, 227 S. W. 753; *Bell* v. *State,* 93 Ark. 600, 125 S. W. 1020; *Meadows* v. *Hudson,* 90 Ark. 294, 119 S. W. 269. See, also, other cases collected in West's Ark. Digest, "Principal and Agent," Key No. 23.

therefore follows that Louck's agency was established; and accordingly, Mark is bound by the provisions of the Loucks contract and the recital in the Springs Investment Company mortgage, to the effect that the mortgage held by Mark is second to a $15,000 first mortgage to Maberry on the same property.

II. *Mark's Claim For Personal Judgment.* The Articles of Incorporation of Springs Investment Company recite the incorporators, officers, and number of shares held by each to be as follows:

Cecil Maberry, President & Treasurer...148 shares

J. A. Maberry,[5] Vice-President.................. 1 share

V. M. Anderson, Secretary ........................... 1 share

The Articles of Incorporation state: ''The amount of capital stock with which this Corporation will begin business is $15,000.''

Mark claims that the Springs Investment Company did not have $15,000 when the mortgage was executed by it to Mark, and so he claims personal responsibility of the incorporators and officers because of § 64-607, Ark. Stats., which reads:

''Penalty for commencing business before amount of capital specified in articles of incorporation is paid in.— No corporation shall commence business until the amount of capital specified in its articles of incorporation as the amount of capital with which it will commence business has been paid in. If any corporation shall violate this provision, its directors and stockholders shall be personally liable for the debts of the corporation, but such liability shall not exceed in the aggregate the amount of capital specified in its articles of incorporation as the amount of capital with which it will commence business.''[6]

[5] He was the father of Cecil Maberry.

[6] See 13 Am. Jur. 202 and 18 C. J. S. 1336 for discussion of liability under similar statutes of other States. In 50 A. L. R. 1030, there is an Annotation entitled: "Individual Liability of Stockholders, Directors, or Officers, on Corporate Contracts Improperly Entered into before Subscription of Requisite Amount of Stock." We here call attention to the fact that in the case of *Better Way Life Ins. Co.* v. *Graves,* 210 Ark. 13, 194 S. W. 2d 10, the Statute there involved related to insur-

But there are several answers to Mark's argument based on the above statute:

(a)    Springs Investment Company's first act of business was to pay Mark $9,000 in cash and to receive the deed from Mark to the Allred Hotel building and contents (of a value of $19,000, according to Mark's own witnesses). The receiving of this deed gave the Corporation more than $15,000 in capital assets according to the contract valuations. Thereafter, the Corporation executed a first mortgage to Maberry for $15,000 (the proceeds of which were to be used to repair and improve the Allred Hotel building and provide additional furnishings); and the Corporation then executed its second mortgage to Mark for the balance of $10,000 on the purchase price of the hotel and contents. But when the Corporation paid Mark the $9,000 and received the deed to $19,000 of property, certainly the Corporation then had more than $15,000 in capital.

(2)    Furthermore, when Mark contracted to sell the Hotel and contents to "a corporation to be organized," he made no requirement that such corporation to be subsequently organized should have any amount of assets except the hotel and contents and a line of credit of $15,000 for subsequent improvements and refurnishings. The incorporators of the Springs Investment Company fulfilled every requirement Mark made of them in his contract of sale. So we find no merit in Mark's contention on this point.

III. *Priority Of Subsequent Mortgage On After Acquired Items Of Furniture.* Springs Investment Company was incorporated in 1948, and took over the Allred Hotel. There was a lower floor of the hotel that had been only a basement; and the Corporation fixed this basement into four apartments, and in 1949, bought furniture and equipment for the same in the amount of $3,286. The Corporation borrowed this amount from Cecil Ma-

ance companies, and required that a certain amount of the capital be paid in "cash." The word "cash" does not appear in our general corporation statute, under which Springs Investment Company was organized.

berry, and executed to him a mortgage on the new furniture and fixtures in the four basement apartments.

Mark claims that his $10,000 mortgage covers the new furniture and fixtures in the basement apartments, and is superior to Maberry's 1949 mortgage of $3,286 thereon. But Mark's mortgage did not attempt to cover any furniture or personal property that the Corporation might acquire *after* the execution of the mortgage to Mark. The mortgage held by Mark merely says, as regards furniture and fixtures in the hotel:

"This (mortgage) also includes all the fixtures, appurtenances, furnishings and all other personal property of whatsoever kind or character now in the Hotel Allred and used in connection with same hotel, located upon the first above described lots."

It is elementary that for a mortgage to cover after acquired property, it must so state. *Hill* v. *Morris,* 124 Ark. 132, 186 S. W. 609; *Fox* v. *Pinson,* 180 Ark. 68, 20 S. W. 2d 645. In the absence of some phase of substitution of other property for that mortgaged—and no such claim of substitution is here made—after acquired property is not covered by a mortgage which fails to refer to after acquired property. Since Mark's mortgage executed in 1948 did not refer to after acquired property, it follows that he has no mortgage on the furniture and fixtures purchased in 1949 and placed in the four apartments, as aforesaid.

The decree is in all things affirmed.